CHERRICK SCHOONMAKER

*v.*

PHILETUS S. DOOLITTLE.

*Filed at Ottawa November 13, 1886.*

1. LIMITATION—*continued possession by a grantor who has conveyed to a co-purchaser more than his portion.* A person purchased land, in his own name, for himself and another, each paying one-half of the purchase money. The two owners established a division line by a survey, and fencing with reference to it, and some four or five years after, the one holding the legal title conveyed to the other, intending to convey the half of the tract as shown by the survey, but in fact conveying a small strip more than such half. Such original purchaser occupied his half of the land according to such division line, under claim of ownership, for thirty-six years. It was *held*, that he became the owner of such strip of land under the Limitation law.

2. PLEADING—*declaration in ejectment.* The demise of the plaintiff in ejectment should not be alleged as of a date prior to his having acquired the title. If his title has been acquired by twenty years' adverse possession under claim of title, the demise should be laid at some time after the bar of the statute is complete, otherwise his evidence may be excluded for variance.

3. It was averred in a declaration in ejectment, that on June 1, 1860, the plaintiff was possessed of the land in dispute, and that, "the said plaintiff being so possessed," the defendant, on May 28, 1885, entered and ejected him, etc.: *Held*, that such allegation was equivalent to an averment that the plaintiff was in possession on May 28, 1885.

4. EJECTMENT—*demand of possession.* Where the defendant in ejectment has not entered into possession under the plaintiff or by his consent, so that there is no relation of landlord and tenant, nor any privity between them, but each claims adversely to the other, no demand of possession or notice to quit is necessary before action brought.

5. PRACTICE—*time to object—as to variance between allegations and proofs.* An objection as to a variance between the declaration and the proof, in an action of ejectment, must be interposed when the evidence is offered, or at least by motion to exclude after the evidence is closed, so that it may be obviated by amendment. Such an objection comes too late on appeal or writ of error.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. Charles A. Works, for the appellant:

Under his declaration, appellee was not entitled to recover upon the evidence introduced by himself. It was incumbent on him to prove that he had the legal estate in the premises at the time of the demise laid in his declaration. Rev. Stat. 1874, chap. 45, sec. 11; *Wood* v. *Morton*, 11 Ill. 547; 2 Greenleaf on Evidence, sec. 304.

To acquire title by adverse possession, requires a possession of at least twenty years' duration. Appellee did not have such title in 1860.

If it were true that a division line was established and could be located, while it might estop either party from ejecting the other, it could not pass title. *Grim* v. *Murphy*, 110 Ill. 271.

Mr. Robert Rew, and Mr. N. C. Warner, for the appellee:

All the proof shows, appellee and David Goodhue practically located a boundary line in 1849, and fenced, and thereafter maintained the fence, by themselves or grantees, for thirty-six years, in such manner as to embrace every element of title by adverse possession. *Turner* v. *Chamberlain*, 15 Ill. 273; *Bolden* v. *Sherman*, 101 id. 486; *Flaherty* v. *McCormick*, 113 id. 544.

There is no proof countervailing the testimony of appellee, Martin McCoy, W. D. Armstrong, and the survey bill, dated May 23, 1849, to the effect appellee and Goodhue expressly agreed, in 1849, to the line then run by Armstrong as the true and permanent boundary line between them, nor to the testimony of Myron H. Doolittle and Alonzo Doolittle, that such agreement was followed by actual possession according to such agreed line; and this is sufficient to conclude both parties and their grantees, or privies in estate. *Crowell* v. *Maughs*, 2 Gilm. 423; *Mauer* v. *Gottmanhausen*, 65 Ill. 503; *Cutler* v. *Callison*, 72 id. 113; *McNamara* v. *Seaton*, 82 id. 498; *Hubbard* v. *Stearns*, 86 id. 37.

The proof of acquiescence, independent of any question of practical location, by express parol agreement, in 1849, is overwhelming and undisputed, and establishes the boundary line claimed by appellee, by estoppel, which is as conclusive upon appellant as upon appellee. *Hubbard* v. *Stearns*, 86 Ill. 38; *Reed* v. *Farr*, 35 N. Y. 113; *Vosburgh* v. *Teator*, 32 N. Y. App. 567; *Cutler* v. *Cullison*, 72 Ill. 115; *Inhabitants, etc.* v. *Benson*, 31 Me. 385; *Stuyvesant* v. *Thompkins*, 9 Johns. 63; Herman on Estoppel, p. 1268, secs. 1131, 1139.

No demand of possession was necessary, because no privity existed between appellant and appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is an action of ejectment, begun on July 27, 1885, by appellee against appellant in the circuit court of Winnebago county, to recover a strip of land, 36 links wide and $32\frac{10}{100}$ chains long, near the middle of the south-west fractional quarter of section 18, township 45, range 2, in the town of Harlem, in that county. The case was tried before a jury in the court below, and verdict was returned, and judgment rendered in favor of appellee. Appellant appeals to this court.

In 1849, appellee and one David Goodhue, whose farms adjoined, agreed to buy the quarter section of land, above described. It was then owned by an estate of which Martin McCoy was administrator, and was duly sold, at public auction, by the administrator, and bid in by appellee for himself and Goodhue. Each was to pay one-half of the purchase money, and each to have one-half of the fractional quarter section, though the title to the whole of it seems to have been taken in the name of appellee. A surveyor, by the name of Armstrong, was at once employed to survey the land. He ran a line through the tract, running east and west, and dividing it into two parts, Goodhue taking the north part, and appellee the south part. The division line, as established by the surveyor, was agreed to by appellee and Goodhue, and

they built a division fence upon that line, and at once went into possession, Goodhue of the portion, north of the fence, and appellee of the portion, south of the fence. The south portion, so taken by appellee, included the whole of the strip, for which this suit is brought, the north line of the strip being the division line established by the surveyor, and upon which the division fence was built.

On January 29, 1854, appellee executed a deed to Goodhue, who had by that time paid up his half of the purchase money, intending thereby to convey to him the north portion of the tract, which was assigned to him in 1849. It was supposed at the time, that this deed only conveyed such part of the quarter section, as lay north of the division fence, established in 1849. Goodhue and his grantees have been in possession of the land, north of the division fence, ever since 1849. Appellee was in the open, notorious and uninterrupted possession of the land, south of the division fence, including the strip, now in controversy, from 1849 down to the spring of 1885, a period of thirty-six years.

In the spring of 1885, appellant purchased the Goodhue tract from one Odgers, who then owned it, and discovered, that the description of the land in his deed from Odgers, instead of covering only the part of the tract, north of the original division line, did, as matter of fact, embrace the strip, now in controversy, which lay south of that line. Examination disclosed the fact, that the original deed from appellee to Goodhue, and the deeds from Goodhue and his successive grantees, all contain the same description, as that which is shown in the deed made directly to appellant. Appellant thereupon took possession of all or a portion of the strip, now in dispute.

The proof clearly shows, that, when this suit was commenced, appellee had become the owner of this strip, by reason of his adverse possession thereof, "hostile to all the world" and under a *bona fide* claim of ownership, for a period

of more than twenty years. Hence, the judgment in his favor should stand, unless the errors, assigned by appellant, are sufficient to reverse it.

It is objected, that, according to the evidence in the record, appellee did not acquire his title, until after the date of the demise, laid in his declaration. The declaration avers, that "plaintiff, on the 1st day of June, 1860, was possessed of a certain close," etc. The proof shows, that the term of twenty years, during which the plaintiff held adverse possession, did not expire until 1869 or 1870, and, therefore, that he did not acquire the legal estate, until some nine or ten years after June 1, 1860. There is great force in this objection, and it is difficult to understand, why the pleader did not lay the time of the demise, as of some date, subsequent to the lapse of the twenty years.

The 11th section of chapter 45 of the Revised Statutes provides, that "it shall be sufficient for the plaintiff to aver, in his declaration, that (on some day therein to be specified, and which shall be after his title accrued,) he was possessed of the premises in question," etc. This same provision was contained in the 7th section of chapter 36 of the Revised Statutes of 1845, and was construed by this court in *Wood* v. *Morton*, 11 Ill. 547, which case was referred to, with approval, in *Pitkin* v. *Yaw*, 13 Ill. 251, and *Holt* v. *Rees*, 44 id. 30. In *Wood* v. *Morton*, the proof showed, that the plaintiff acquired his title on June 21, 1844, while the declaration averred, that he was possessed of the premises, and also, that "he was ejected by the defendant," on June 1, 1844. In *Holt* v. *Rees*, the proof showed, that the title was acquired on August 22, 1865, while the declaration laid the date of the demise and also the date of the ejection, as being on May 3, 1865. In *Pitkin* v. *Yaw*, the deed, introduced to show title, was dated January 4, 1851, and the declaration alleged title on June 1, 1850, but the facts, as recited, do not disclose, on what date the declaration avers the ouster to have taken place.

The cases in 11 and 44 Ill. are distinguishable from the case at bar, in that, in those cases, the title, entry *and ouster* are all laid in the declaration, as of an earlier date, than the date, when the testimony showed the title to have been acquired.   In the case at bar, the declaration alleges the *ouster* to have taken place on May 28, 1885.   It avers, that, on that day, which was long subsequent to the acquisition of the title, "defendant   *   *   *   entered into the said premises and ejected the said plaintiff therefrom."   Where the plaintiff is alleged to have been in possession at one date, and to have been ejected therefrom at a later date, it is a reasonable presumption, that he continued in possession until the date of the ouster.   The declaration, in the present case, alleges, that plaintiff on June 1, 1860, was possessed of the strip, and that "the said plaintiff being so possessed," the said defendant, on May 28, 1885, entered and ejected him.   We regard this allegation as equivalent to an averment, that plaintiff was in possession on May 28, 1885.   He could not have been ousted, unless, at the time of ouster, he was in possession.

In the cases of *Wood* v. *Morton* and *Holt* v. *Rees, supra,* it does not appear, that the objection, here under consideration, was not made before the trial court.   In *Pitkin* v. *Yaw, supra,* it was made upon the trial below, and the deed, showing the title, was excluded, on the ground, that it bore a later date than the time of the demise, as laid in the declaration.   The objection points out a variance between the proofs and declaration.   The defendant should have objected to the evidence at the time, or, at any rate, after the evidence was all in, should either have entered a motion to exclude it from the jury, or have asked the court to instruct the jury to find for the defendant.   But nothing of this kind was done.   If this question had been raised in the trial court in either of the ways here suggested, it would have afforded the plaintiff an opportunity of amending his declaration, so as to correspond with the facts proved ; but, instead of this, the defendant

remains silent, raises no objection to the relevancy of the evidence, goes before the jury on the proofs as submitted, speculating on the chances of a verdict in his favor on the merits, and, being unsuccessful in this, removes the case to a court of review, where, for the first time, this specific objection is raised. Even in the motion for a new trial we do not find it. To permit the defendant, after all this, to finally prevail here, on this defence, would be highly unjust to appellee. *City of Mattoon* v. *Fallin*, 113 Ill. 249.

It is again objected, that appellant took possession of the strip by the permission and with the consent of appellee, and, therefore, that appellee should have been required to prove a demand for possession, or a notice to quit, before bringing his ejectment. The refusal of the trial court to give an instruction, asked by appellant, embodying the objection, here stated, is assigned for error. The proof, however, does not show, that appellee consented to an entry by appellant upon the strip in question. When appellee was informed of the mistake in the description, he consented to have a new survey made, and took part with appellant in making such survey, with a view of ascertaining whether the description in the deed did really cover the strip in controversy. But, while they were measuring the land, he told appellant, with considerable emphasis, not to move the fence southward, so as to enclose the strip. There was no relation of landlord and tenant, nor any privity of any kind between appellant and appellee, in relation to these premises. They were claiming under independent, hostile titles. Appellee claimed to be owner by virtue of twenty years' adverse possession. Appellant claimed to be owner by virtue of a series of conveyances from appellee down to himself. The rule, requiring notice to quit, or demand of possession, has no application, where parties occupy such an attitude towards each other, as is here stated. *Herrell* v. *Sizeland*, 81 Ill. 457.

The instructions, given for the defendant below, presented to the jury fairly and favorably to his view of the controversy, the question, whether a new line of division was established by agreement between the parties in the spring of 1885. The jury found against the existence of such an agreement.

The instructions, which were given for plaintiff below, may be inartificially drawn, but contain no error, for which the judgment should be reversed. The verdict does justice between the parties. Armstrong, who made the survey of 1885, as well as that of 1849, says of the line, run in 1849: "It was right; it divides the land into two equal parts according to government survey." He says of the line, run in 1885: "This last line does not divide the land into two equal parts. It gives about thirty-six links more to the north part than to the south part." His evidence is uncontradicted.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*