SOLOMON FISHER *et al.*

*v.*

HUGH BENNEHOFF.

*Filed at Ottawa September 26, 1887.*

1. DESCRIPTION—BOUNDARIES — *the rule for ascertaining boundary lines—monuments, courses and distances, etc.* The true boundary lines of a tract of land conveyed are where they are actually run, and when such lines, or any of them, are marked by monuments placed by the surveyor or the parties, at the time, to indicate where they may be found, such monuments will afford the most satisfactory evidence of the place where the true lines were located. The original stakes or posts must control the calls in the deed for courses and distances.

2. The rule of applying descriptions of boundaries is, first, to natural objects; second, to artificial marks; and lastly, to courses and distances given. A government corner, when known, may be referred to as a monument, in the description of land in a deed; but if it is mistaken, and a party lays off lots on his own ground which are marked by stakes or other visible monuments, and conveys with reference to such boundaries, the grantee will take the same according to the lines as actually run and established, although the grantor may have supposed that one of the lines corresponded with a line in the government survey.

3. SAME—*division lines fixed by parol agreement.* The owners of adjoining lands may, by a parol agreement, when fairly and understandingly entered into, settle and permanently adopt and establish a boundary line between their lands, which, when followed by possession according to the line established, will be binding upon them and their privies, the same as if made by deed. It is the policy of the law to give stability to such agreements, and thus prevent litigation.

4. The adoption of a division line between the owners of adjoining land may be implied from their acts and declarations, and acquiescence in respect thereto; and after the lapse of thirty-five years of uninterrupted acquiescence in such a boundary line, and the frequent recognition of it as the true division line, the parties and their privies were held to be estopped from asserting that it was not the true line.

5. LIMITATIONS—*color of title, what constitutes—good faith presumed.* A commissioner's deed for land sold under a decree in partition, describing the land by metes and bounds, is color of title, under the Limitation law; and in the absence of any evidence to the contrary, the good faith of the holder will be presumed.

6. SAME—*color of title and good faith, as questions of law and fact.* Whether a deed constitutes color of title under the Limitation law, is a question of law, for the court; but whether it was acquired in good faith, is a question of fact, for the jury to determine.

7. SAME—*twenty years' possession as a bar.* Twenty years' adverse possession of land, accompanied by payment of taxes, under a continuous assertion of ownership hostile to all others, will constitute a bar to a right of entry by any one not within the saving clause of the statute, claiming to have paramount title, whether the claim of the party in possession is rightful or not, or even under a muniment of title.

8. POSSESSION *of land—how established.* Actual possession of land may be had without having the same enclosed. When a party has color of title, possession may be shown by the constant and uninterrupted use of the same for a series of years; and of timber land, by taking therefrom of wood, for fuel, fencing, and other purposes; or it may be shown by an actual occupancy of a portion of the tract for which he may have a deed. When the taking of timber from a tract held under a deed is relied on, it is not necessary that the timber should be taken off any particular part of the land.

9. SAME—*possession of part as extending to the whole.* Where a person enters upon a tract of land without color of title, or an instrument defining its boundaries, his possession will not extend beyond what he has enclosed or actually occupies; but when he has a deed for the same, actual possession of a part will, in law, constitute possession of the whole not in the adverse possession of another.

10. So twenty years' possession of a tract of land under a deed, or adversely, as to any part of the land within the enclosure or an adopted division line, even though not on the true line, is a bar to an action of ejectment by one claiming a right of entry.

11. SAME—*evidence—proof of possession.* A witness may testify to the fact that a party was or is in the possession of a tract of land, without stating the facts which go to show possession; and the other party, on cross-examination, may call for the facts upon which the witness bases his testimony, or as to the facts constituting possession.

12. INSTRUCTION—*upon a question of fact.* Where there is no evidence tending to impeach the good faith of the holder of color of title in an action of ejectment, an instruction of the court that it was held in good faith, though erroneous, is no ground for a reversal, as it could work no prejudice. But if there had been any evidence tending to show bad faith, it would have required a reversal of the judgment, if not warranted on some other ground.

APPEAL from the Circuit Court of Stephenson county; the Hon. JOHN V. EUSTACE, Judge, presiding.

This was an action of ejectment, brought on the 3d day of December, 1884, in the circuit court of Stephenson county, by Hugh Bennehoff, against Solomon Fisher and William Fisher, to recover a strip of land described in the declaration as commencing at the point where the east and west fence, lately built by the defendant Solomon Fisher, intersects the east side of the public highway running north and south by the plaintiff's dwelling house, and 13 rods 9 feet south-easterly from the south-east corner of said house, in the town of Rock Grove, in Stephenson county; thence easterly, following the line of said fence, 121 rods; thence south 21 links; thence west 121 rods to the east side of said highway, and thence north to the place of beginning. A trial was had, resulting in a verdict and judgment for the plaintiff, from which this appeal is prosecuted.

In 1845, Solomon Fisher, the defendant, was the owner of all of the north-west quarter of section 25, in township 29 north, range 8, east of the fourth principal meridian, except the north-east quarter thereof, which was held and occupied by Joseph Mean, under a certificate of purchase from the United States. Two public highways were laid out over the quarter-section, but when established does not appear, and is not material. The first runs north and south about 36 rods east of the west line of the quarter, as appears from a plat, and the other runs from the first on a due east line, the centre of it being $21\frac{2}{10}$ rods or perches south of the north line of the quarter. The plaintiff's residence is on the land west of the first named road, and a little north of the half quarter-section line running east and west. In 1845, Solomon Fisher and Joseph Mean employed the county surveyor to run and establish the half quarter-section line between their respective lands, and such line was run not only between the north-east and south-east forties, but also between the west forties, which Fisher also owned. This half quarter-section line, (*i. e.*, line dividing the quarter-section into halves, east

and west,) seems to have been satisfactory to all parties, and it was marked and evidenced by blazing the trees along the same. Along that part of it over the west half of the quarter, there is a cherry tree, a thorn tree and an elm, marked as line trees, and on the line between Fisher and Mean other trees were in like manner marked, so as to plainly indicate the division line across the quarter-section.

On June 5, 1846, Solomon Fisher and wife, by their warranty deed, sold and conveyed to one Sarah Shaffer, wife of Andrew Shaffer, the following described land: "Commencing at the north-west corner of section 25, town twenty-nine (29), range 8 east, 4th principal meridian; thence east along the section line, seventy-seven and seven-tenths ($77\frac{7}{10}$) perches; thence south eighty and seven-tenths ($80\frac{7}{10}$) perches; thence west fifty-three and seven-tenths ($53\frac{7}{10}$) perches to a post, bearing trees, pin oaks 12 inches diam., S. $21\frac{1}{2}$, E. 9S l., and 14 inches diam., S. 66, E. 83 l.; thence south twenty-six and seven-tenths ($26\frac{7}{10}$) perches to a post; thence west twenty-four (24) perches; thence north to the place of beginning, one hundred and seven and four-tenths ($107\frac{4}{10}$) perches, containing forty-three and two-tenths ($43\frac{2}{10}$) acres."

On June 20, 1846, Joseph Mean and wife, by their warranty deed of that date, conveyed to the said Sarah Shaffer the following other land, described as follows: "Beginning at a post $21\frac{2}{10}$ perches south of the north-east corner of the west half of the north-west quarter of section 25, township 29, range 8 E., 4th p. m.; thence south $59\frac{7}{10}$ perches to a post; thence east 17 perches to a post; thence north $59\frac{7}{10}$ perches to a post; thence west 17 perches to the place of beginning, containing $6\frac{24}{100}$ acres, more or less."

On July 12, 1847, Andrew Shaffer, and Sarah, his wife, conveyed to Daniel Bennehoff, the plaintiff's father, the same lands conveyed to her by Fisher and Mean and others, described as follows: "Beginning at the north-west corner of section 25, in township twenty-nine (29), of range eight (8),

east of the fourth principal meridian; thence east with section line $60\frac{7}{10}$ perches to the north-west corner of a certain tract of land conveyed by Andrew Shaffer and wife to James McCauley; thence south $21\frac{2}{10}$ perches to a post; thence east 34 perches to a post; thence south $59\frac{7}{10}$ perches to a post; thence west $70\frac{7}{10}$ perches to a post, bearing trees, pin oaks 12 inches diam., S. $21\frac{1}{2}$ deg., E. 98 lks., and 14 inches diam., S. 66 deg., E. 83 lks.; thence south $26\frac{7}{10}$ perches to a post; thence west 90 perches to the south-east corner of a tract of land conveyed by said Shaffer and wife to John Wore; thence north $107\frac{6}{10}$ perches to a post on the north line of section 26; thence east 66 perches to beginning corner."

The plaintiff proved the death of Daniel Bennehoff in 1869, and introduced in evidence deeds from all the other heirs-at-law of the said Daniel Bennehoff to himself, conveying to the plaintiff the same lands described in the foregoing deed, all of said deeds bearing date before the commencement of the suit. The plaintiff then read in evidence a deed from John Wore to Pinkney Schrock, dated May 20, 1847, conveying land described as follows: "Beginning at a post $21\frac{2}{10}$ perches south of the north-east corner of the north-west quarter of section 25, township 29, north of range 8, E., 4th p. m.; thence south $29\frac{8}{10}$ perches to a post; thence east $9\frac{7}{10}$ perches to a post; thence south $29\frac{8}{10}$ perches to a post; thence west $70\frac{2}{10}$ perches to a post; thence north $59\frac{7}{10}$ perches to a post; thence east $60\frac{5}{10}$ perches to the place of beginning, containing $24\frac{38}{100}$ acres, being a part of the north-east quarter of the north-west quarter, and a part of the north-west quarter of the north-east quarter of section 25, township 29, range 8, E., 4th p. m., for which Joseph Mean holds a certificate of purchase from the United States land office, at Dixon, Illinois, No. 18,113, dated October 25, 1844, a part by deed of James McCauley, bearing date 20th day of June, 1846, being the same tract of land which Joseph Mean, and Elizabeth, his

wife, by deed dated the 20th day of June, 1846, granted and conveyed to the said John Wore, his heirs and assigns."

The plaintiff also introduced in evidence a deed from William Wagonhaul, a commissioner, to the plaintiff, bearing date June 20, 1868, and purporting to convey the land described in the preceding deed. The deed recites the pendency of a suit in the circuit court of Stephenson county, for the partition of certain lands between the heirs of the said Pinkney Schrock, deceased, the appointment of the commissioner, with power to sell and convey the land, made at the April term, 1868, of said court, and the sale to the plaintiff of the land described as in the preceding deed, and other land, for the sum of $4180.20, and purports to convey the lands to the plaintiff. The plaintiff proved that he immediately took possession of the lands in section 25, therein described, and had occupied the same ever since, until the entry of the defendants upon the strip in controversy, and had paid all taxes upon the same since his deed from the commissioner.

There was evidence showing that Daniel Bennehoff had possession of the land he bought of Mrs. Shaffer, from 1847 until his death, up to the blazed line, and that Solomon Fisher since that time repeatedly acknowledged and pointed out that line as the true one. In 1864 he had Adam Krape build for him 35 or 40 rods of fence on the line of the blazed trees, and in 1869 appellee and Solomon Fisher, by mutual agreement, joined and completed the division fence on the line of such trees. The evidence also showed that Pinkney Schrock took possession of the land described in the deed of John Wore to him, in 1847, up to the line of the marked and blazed trees. On April 25, 1882, the defendants took forcible possession of the strip in dispute,—it then being in the actual enclosure of the plaintiff,—and built a board and wire fence north of the fence then standing as the division fence, whereupon this suit was brought.

MR. J. A. CRAIN, for the appellant:

The court erred in permitting improper evidence to go to the jury, on the part of the plaintiff, in not confining the proof of the acts of possession to the strip of land in dispute. The doctrine of adverse possession is to be taken strictly, and is not to be made out by inference, but by clear and positive proof. *McClellan* v. *Kellogg*, 17 Ill. 504; *Jackson* v. *Brewer*, 48 id. 208.

The presumption is against adverse possession, and the claimant must prove it clearly. *Russell* v. *Davis*, 38 Conn. 562; *Parker* v. *Banks*, 79 N. C. 480; *Hood* v. *Hood*, 2 Grant, 229; *Lynde* v. *Williams*, 68 Mo. 360; *Alexander* v. *Polk*, 39 Mass. 737; *Sharp* v. *Dangney*, 39 Cal. 505.

The court erred in instructing the jury that the deed from Wagonhaul to Hugh Bennehoff was color of title made in good faith, as the good faith was a question of fact.

Mr. U. D. MEACHAM, for the appellee:

The defendants entered and took forcible possession. Appellee was lawfully entitled to continue in possession until dispossessed by due process of law. *Bert* v. *Allen*, 30 Ill. 34; *Reeder* v. *Purdy*, 41 id. 279; *Farwell* v. *Warren*, 51 id. 47; *Doty* v. *Burdick*, 83 id. 473.

Appellee's possession was *prima facie* evidence of title in him. 2 Greenleaf on Evidence, sec. 331; 1 id. sec. 109; *Bayer* v. *Hobbs*, 67 Ill. 597.

The agreement as to the division line estopped appellants from entering upon and claiming the strip of land. *Cutler* v. *Callison*, 72 Ill. 113; *Hubbard* v. *Stearns*, 86 id. 35; *Bauer* v. *Gottmanhausen*, 65 id. 500; *Thomas* v. *Sayles*, 63 id. 363; *Kerr* v. *Hitt*, 75 id. 53.

The person having the actual possession of land is deemed to be the true owner until the contrary is shown. *McLean* v. *Farden*, 61 Ill. 107; *Davis* v. *Easly*, 13 Ill. 192.

No point was made as to the good faith in which the color of title was acquired, in the court below. That was conceded.

Mr. Justice Shope delivered the opinion of the Court:

This action grows out of a dispute as to the half quarter-section line east and west through a portion of the north-west quarter of section 25, in township 29 north, range 8, east of the fourth principal meridian, in Stephenson county. It is contended by appellants that it bounds the strip of land in controversy on the north, and by appellee, that it bounds the strip on the south. Appellants claim that from a survey made in 1881, the north line of section 25 was found to be $5\frac{1}{2}$ feet further north than it was supposed to be in 1846, and that the call of $80\frac{7}{10}$ perches in the deed to Mrs. Shaffer, should commence that distance further north, and terminates, not on the blazed line, but at the north line of the disputed strip.

The evidence shows that the first post referred to in Solomon Fisher's deed to Mrs. Shaffer, is in a direct line with the cherry tree and other trees marked or blazed as the line trees, so that the deed in fact embraced the strip in dispute on the west half of the quarter. The true boundary lines of the tract conveyed are where they were actually run, and when such lines, or any of them, are actually marked by monuments placed by the surveyor or the parties, at the time, to indicate where they may be found, such monuments will afford the most satisfactory evidence of the place were the true lines were located. The original stakes or posts must control the call for courses and distances. (*Bauer* v. *Gottmanhausen,* 65 Ill. 499; *McClintock* v. *Rogers,* 11 id. 296; *Miller* v. *Beeler,* 25 id. 163.) When a deed describes by admeasurements, and at the same time by known and visible monuments, the latter will govern. (*Howe* v. *Bass,* 2 Mass. 380; *Pernam* v. *Wead,* 6 id. 131; *Bosworth* v. *Sturtevant,* 2 Ark. 392; *Dawes* v. *Prentice,* 16 Pick. 435; *Frost* v. *Spaulding,* 19 id. 445; *Kamphouse* v. *Gaffner,* 73 Ill. 453.) The rule of applying description of boundaries is, first, to natural objects; second,

28—121 Ill.

to artificial marks, and lastly to courses and distances given. *Botton* v. *Lann*, 16 Texas, 96; *Fullwood* v. *Graham*, 1 Rich. 497; *Ferris* v. *Coover*, 10 Cal. 629; *Beahan* v. *Stapleton*, 13 Gray, 437.

A government corner, when known, may be referred to as a monument, in the description of land in a deed; but if it is mistaken, and a party lays off lots on his own ground, which are marked by stakes or other visible monuments, and conveys with reference to such boundaries, the grantee will take the same according to the lines as actually run and established, although the grantor may have supposed that one of the lines corresponded with a line in the government survey. In this case the first line run by the surveyor to the south, extended to the blazed line, and the next line, being to the west, went to the post which was witnessed by two pin oak trees, and was on the blazed line. The fact that Fisher was mistaken in the north line of the quarter, as established by the government, if he was mistaken, affords no reason for changing the boundaries established by him in making his conveyance to Shaffer. A grantee has a right to the land as located by the grantor. It is by no means certain that the true north boundary of the quarter is further north than it was at first supposed to be. Indeed, a careful consideration of the evidence fails to convince us that the contention of appellee is sustained. While we do not, in the view we take of the case, deem it necessary to discuss the evidence relating to that branch of the case, it may be remarked that it is shown, clearly, by evidence introduced by appellants, that the government monuments were still visible in 1847,—two years after the survey made between Mean and Fisher in 1845. It also appears that Fisher was present during the survey of 1845, and assisted in blazing the line then established as being the boundary between the north and south forties of the quarter. Fisher then resided on a portion of this land. So did Mean, and there is but little doubt that the surveyor, Fisher, and

Mean, must have known where these government monuments were. It is true, some of the surveyors who run the line in 1881 and since, put it further north, but others, one, at least, does not, and it is reasonably probable that as this surveyor seems to have found evidences of the original monument, and as it coincides with the survey made in the presence of the owners of the property when dividing the land between themselves, when the government monuments were still visible, the line as run by him is the true one, so that we are not prepared to say that the evidence introduced by appellee creates a preponderance in his favor. So, if appellee is deprived of a portion of his land on the south, it is at least uncertain whether he could take a corresponding quantity on the north. But we think Fisher, and those claiming under him, are estopped by his deed from disputing the plaintiff's south boundary, as actually located at the time of its delivery, as before shown. This is sufficient to sustain the judgment below as to all that part of the strip of land in controversy situated in the west half of the quarter, and it only remains to determine whether the plaintiff is entitled to that upon the east half of the quarter.

The law in this State is well settled that the owners of adjoining lands may, by parol agreement, when fairly entered into, settle and permanently adopt and establish a boundary line between their lands, which, when followed by possession according to the line established, will be binding upon them and their privies, the same as if made by deed. It is the policy of the law to give stability to such agreements, and thus prevent litigation. See *Crowell* v. *Maughs*, 2 Gilm. 419 ; *Cutler* v. *Callison*, 72 Ill. 113 ; *Kerr* v. *Hitt*, 75 id. 60 ; *McNamara* v. *Seaton*, 82 id. 498.

There can be but little doubt, from the evidence, that Fisher and Mean, in 1845, had a division line run between their respective lands, and established monuments to witness it, and that all parties interested in the lands acquiesced in the same

until some time in 1881, and recognized it as the true bound-
ary line, and built and maintained fences, and cut timber, on
the faith that it was such; and there is abundant evidence
that Solomon Fisher, on frequent occasions, pointed out the
witness-trees, and this line, as being the true line. And it
being shown that the government monuments were visible long
after the survey of 1845, and Solomon Fisher being shown,
as before stated, to have occupied this land at the time of the
running of the line between himself and Mean, and was with
the surveyor while running it, it is to be presumed that he
knew whether the line thus run was in accord with the gov-
ernment corners then existing. The adoption of such a line
may be implied from acts and declarations, and acquiescence
therein; and after the lapse of thirty-five years of uninter-
rupted acquiescence in the line, under the circumstances the
parties and their privies should be estopped from asserting
that it is not the true division line.

The plaintiff gave in evidence, as color of title, two deeds:
One from John Wore to Pinkney Schrock, dated May 20,
1847, for the balance of the north-east quarter of the north-
west quarter of section 25, lying south of the road, which,
by the calls therein, embraced the balance of the disputed
strip, and proved that Schrock went into the possession of
the land under his deed, and occupied the same, up to his
death, to the line claimed by plaintiff, by all the acts of own-
ership and possession of which it was susceptible. The other
deed was from William Wagonhaul, a commissioner appointed
by the circuit court of Stephenson county, at its April term,
1868, in a proceeding by the heirs of Schrock for the parti-
tion of these lands. This deed was dated June 20, 1868, and
purported to convey the land to the plaintiff by the same
description as that in the deed of Wore to Schrock, and was
clearly color of title to the land described therein. The plain-
tiff went into possession of the land therein described, down
to the line now claimed by him as the true line, and occupied

the whole of it, paying all taxes assessed against his land, until the defendants entered and took forcible possession of the strip in controversy. There is nothing to call in question the good faith of the plaintiff in making the purchase and accepting the commissioner's deed, and in his occupancy and possession of the land thereunder. The good faith of the holder of color of title will be presumed in the absence of anything to the contrary. It should be here stated, that in 1864 plaintiff had built about 40 rods of fence on the blazed line, as a division fence, and in 1869, Solomon Fisher joined with him, and, by agreement, built the rest of the division fence between their lands on that line.

We think the plaintiff has shown a right, under the twenty years limitation law, to all the land. In *Kerr* v. *Hitt*, 75 Ill. 59, the court say : "Twenty years' adverse possession of land, accompanied by payment of taxes, under a continuous assertion of ownership, hostile to all others, will constitute a bar to a right of entry by any one not within any saving clause of the statute, claiming to have paramount title, whether the claim of the party in possession is rightful, or even under a muniment of title. (*Turney* v. *Chamberlain*, 15 Ill. 271.) * * * Monuments established by the acts of adjacent owners are as sufficient to limit boundaries of their respective lands, when accompanied by actual possession, as appropriate descriptions in the deed. Of this character are the division fence and blazed line, which we regard as having been established by the adjacent land owners. As was said by this court in *Bauer* v. *Gottmanhausen*, 65 Ill. 499, it has been held that when parties agree upon a boundary line, and enter into possession according to that line, they are thereby concluded from afterwards disputing that it is the true line, even when the Statute of Limitations has not run. Our conclusion is inevitable, from the evidence, the blazed line was run, in the first instance, to mark the division, and afterwards the fence was erected on that line, if not by express agreement, certainly by

the tacit consent of the abutting proprietors. By all the authorities, this is sufficient to estop the parties, their heirs and all privies in estate, from disputing the fact it is the true line."

Twenty years' actual possession of a lot under a contract of purchase, or adversely, is a bar to an action of ejectment as to any part of the land within the enclosure, even though the fence may have been over the true boundary of the lot. (*Schneider* v. *Botsch,* 90 Ill. 577.) See, also, *Schoonmaker* v. *Doolittle,* 118 Ill. 605, which is directly in point. This suit was begun December 3, 1884.

The facts of this case clearly bring it within the rule announced by this court in the cases above cited. It is shown that Schrock acquired possession, under his deed from Wore, as far back as 1847, and held it continuously up to his death, claiming to the blazed line, and that since 1868, up to 1882, the plaintiff held the undisputed possession to the same line. So, also, it is shown, that Daniel Bennehoff was in possession of that part of the land conveyed to him, as before shown, from 1847 up to his death, in 1869, and that from that time the plaintiff has had the actual and exclusive possession of the same until the entry by the defendants. As already shown, prior to the building of the division fence in 1864 and 1869, the parties were, without objection, and with the knowledge of appellant and his privies, claiming to this line, and exercising such acts of ownership as the land was susceptible of, —*i. e.,* by cutting timber, etc.,—and from the time of building such fence, plaintiff's possession was by actual enclosure and occupancy of the land. For over fourteen years plaintiff had thus, by the consent and agreement of appellant and his privies, had the land within his actual enclosure, and for over thirty years the line had been recognized and acquiesced in by all parties. We think the cases cited are decisive of the question being considered, and that appellants are concluded from asserting the line thus established and acquiesced in is not the true line.

It is claimed that the court erred in the admission of evidence to show possession; and first, that the plaintiff should have been confined to acts of ownership over the disputed strip; and second, that it was improper to allow the witnesses to say who was in possession of the land, and that the fact of possession could be shown only by proof of the various acts which go to establish possession. Neither of the objections is tenable. When a person enters upon a tract of land without color of title, or an instrument defining its boundaries, his possession will not extend beyond what he has enclosed or actually occupies; but when a party has a deed for a tract of land, actual possession of a part will, in law, constitute possession of the whole not in the adverse possession of another. A party need not have land enclosed before he can be said to be in actual possession. When he has color of title, possession may be shown by the constant and uninterrupted use through a series of years; and of timber land, by taking therefrom wood for fuel, fences and other purposes; or it may be shown by an actual occupancy of a portion of a tract for which he may have a deed, under which possession is held. In such cases the deed may be regarded as enlarging the possession to all the land it includes. *Austin* v. *Rust*, 73 Ill. 491; *Scott* v. *Delany*, 87 id. 146; *Hubbard* v. *Kiddo*, id. 578; *Coleman* v. *Billings*, 89 id. 183; *Cairo and St. Louis Railroad Co.* v. *Woosley*, 85 id. 370. The court properly refused to confine the plaintiff to the cutting of timber before the land was enclosed to the narrow strip involved in this action.

No objection is perceived to asking a witness who was in the possession of land. The other party may cross-examine as to the facts constituting the possession, if he desires. In *Hardenburgh* v. *Crary*, 50 Barb. 32, the court say: "There is one particular in which I think the judge at the circuit erred, and for which I think a new trial ought to be granted, without examining the other questions in this case. He excluded evidence to show who was in the actual occupation of the prem-

ises in dispute, the object being, doubtless, to show that the
defendant was so in possession. I think this was a question
of fact, and not a conclusion of law. It was a question to be
determined by ocular observation, and not by a process of
reasoning. \* \* \* It might be more or less difficult to
answer if both parties were upon the premises; but the diffi-
culty of the question does not affect the competency of the
evidence. It might involve the necessity of further questions,
and, perhaps, of a rigid cross-examination; but this last, I
think, was the true remedy, and not an objection to the ques-
tion itself. It belongs to that class of facts, of which there
are many in the law, seemingly involving, to some extent,
the expression of an opinion or a conclusion from other facts,
as to which, from the necessity of the case, the law toler-
ates a direct and comprehensive question,"—citing *Parsons*
v. *Brown,* 15 Barb. 590. To the same effect, see *Knap* v.
*Smith,* 27 N. Y. 281. In *Rand* v. *Freeman,* Allen, 517, one
of the plaintiffs was asked, "Did you take possession of the
property?" It was objected that the question was improper,
because possession consists partly of law and partly of fact.
The court say: "It is a sufficient answer to this, to say that
the word is often used merely in reference to the fact, and the
defendant could have protected himself from all prejudice by
cross-examination. The instruction of the court was a suffi-
cient protection." In *Thompson* v. *Hall,* 45 Barb. 216, the
witness was asked, "Was he (Thompson) able to pay his debts
in December, 1855, in the course of trade?" The court say, in
form the question called for a fact, and not an opinion of the
witness, and that the question was proper. See, also, *Blanch-
ard* v. *Mann,* 1 Allen, 433; *Iselin* v. *Peck,* 2 Rob. (N. Y.) 629.

The plaintiff's first instruction is claimed to be erroneous,
in telling the jury that the deed from Wagonhaul was color
of title, made in good faith. That instruction is as follows:

"The court instructs the jury, that the deed in evidence
from William Wagonhaul, commissioner, to Hugh Bennehoff,

is color of title, made in good faith, to the lands described in said deed; and if the jury finds, from the evidence, that the plaintiff, at the date of said deed, went into and took actual possession of the lands in said deed described, and continued in such possession for thirteen successive years thereafter, and did, during all said years, pay all the taxes legally assessed upon said lands, then the law holds the plaintiff to be the owner of the lands described in said deed, to the extent and according to the purport of his said deed, unless the defendants show a better title in themselves, or in some other person than the plaintiff."

It has been held by the Supreme Court of the United States, that whether the evidence establishes the good faith of the holder of color of title, is a question of fact, to be decided by the jury. (*Wright* v. *Mattison,* 59 U. S. 50.) Whether the deed in this case is color of title, is a question of law; but whether it was acquired in good faith, was a question of fact for the jury, and the instruction is faulty in telling the jury that it was held in good faith. But as there was no evidence tending to impeach the good faith of the holder of the color of title, the instruction could not have prejudiced the defendants. If there had been any evidence tending to show bad faith, the instruction would have been such error as to require a reversal of the judgment, if not warranted on some other ground.

From the view here expressed, it will not be necessary to consider the other questions discussed by counsel. If the judgment is warranted on any ground, as we think it is, it should stand, although error may have been committed as to matters not essential to the right to recover. It is sufficient to say that we fail to see any error in the rulings of the court in the admission or exclusion of evidence, or in giving or refusing instructions, which, in our judgment, might have changed the verdict of the jury.

The judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*