(No. 25063.—)

THE TEXAS COMPANY, Appellant, *vs.* JOHN T. HAW-THORNE *et al.* Appellees.

*Opinion filed April 17, 1939—Rehearing denied June 13, 1939.*

WALTER E. WILL, and KIGER & DILSAVER, (GREEN & PALMER, and J. H. HILL, of counsel,) for appellant.

W. A. MILLER, ALFRED S. PFAFF, and WHAM & WHAM, (JOHN J. HASSLER, and ANDREWS & ANDREWS, of counsel,) for appellees.

Mr. CHIEF JUSTICE SHAW delivered the opinion of the court:

This appeal involves the title to a parcel of land 52.42 feet wide, north and south, by 264 feet long, east and west, located in the west half of the southeast quarter of section 5, township 1 north, range 2 east of the third principal meridian in Marion county, Illinois. The issue involved will more easily be understood by reference to the following plat:

The precise point at issue is the location of the south end of the line D-E, but in order to arrive at a consideration of that issue it is necessary to give a short history of the title. The southeast quarter of section 5 was entered by and patented to Thomas Richardson. In 1851, Richardson deeded the tract G-H-I-J (on the above plat) to the trustees for the Methodist church at Antioch, and their successors still own it. They have given an oil and gas lease to plaintiff. The twelve-acre tract outlined on the above plat by lines K-F-E-D is referred to in the record as the "Farthing" tract. The first legal description of this tract which appears in this record is in a deed of 1852 from Robert Tate and wife to William Ray. The record does not disclose how Tate obtained title from the original patentee. In the William Ray deed the tract is described as follows: "Beginning at a stone at the Northwest corner of the Southeast quarter of section number five running thence South twenty chains to a stone thence East six chains to a stone thence North twenty chains to a stone thence West six chains to the place of beginning containing twelve acres in town one north, range two east."

In 1873, William Ray died and his estate was partitioned in kind. This twelve acres, with other property, was set off to William I. Ray, Hulda Farthing and Elizabeth Ray, only heirs of Brutus Ray, a deceased son of William Ray. In that partition it was described only as "12 acres off of the west side of the Northwest quarter of the Southeast quarter * * * in section Five Township one (1) North, range two East," etc.

In 1888, Alexander Hamilton, then county surveyor for Marion county, surveyed this twelve-acre tract for Thomas Farthing. From his notes it appears that he located the southwest corner of the Farthing land on the half-section line 20.08 chains south from the center of the section and marked it with a boulder, the dimensions of which are given. He located point E (which is now in controversy) six chains east from that boulder, and marked this point with a stone

which is still in place. The east line (E-D on the plat) he measured at 20.07 chains, and the north line (K-D) at 6 chains. He set stones at all four corners and they all agreed (according to his notes) with a previous survey by one S. E. Hill, except the one here in question at point E, as to which he found a variation of 21 inches, which he accounted for in his notes by saying, "The difference with Mr. Hill is accounted by his taking the Snyder corner to far N. 20 lks." The Hill stone also remains, 21 inches from the Hamilton stone, and this point E has been a fence corner for many years. The corner post, part of the east and west fence and traces of the north and south fence are still visible, although most of the Farthing tract is now submerged in a water reservoir, the water of which appears to come south very nearly, but not quite, to the point E. In the deed from J. T. Farthing and wife to the Centralia Water Supply Company, given in 1910, which conveyed flood rights to approximately half of the property, they described it simply as 12 acres off of the west side of the N. W. ¼ of the S. E. ¼ of section 5, etc. The Texas Company holds an oil and gas lease on the south half of that part of this tract not conveyed to the Centralia Water Supply Company, and about this there is no question.

The remainder of the land shown by the above plat has come by a series of mesne conveyances to John and Lissa B. Hawthorne, in all of which conveyances, prior to 1916, there appears to have been some errors of description. They do not appear of record in this case, but references are made to them in a bill to quiet title, an amended bill in the same case, and a decree, all of which were filed in the circuit court of Marion county in the year 1916. The amended bill does not correspond to the original bill, nor the decree with either. These proceedings to quiet title concern numerous other tracts, but so far as the amended bill is concerned the only allegation of any mistake in description as applied to the tract here in question is to the effect that in certain deeds

from Richardson to Fyke, from Fyke to Fowler, and from Fowler to Shirley, the premises shown by our plat were described as follows: "A part of the west half of the South east quarter of Section 5, beginning at a stone quarter section corner on the south line of the section, thence east 14.22 chains to a stone, [A-B]; thence north forty chains stone, [B-C]; thence south 19.11 chains to a stone; thence west 6.24 chains to a stone, thence south 1.22 chains stone, thence east 4 chains stone, thence south 5 chains stone, thence west 4 chains stone, thence south 14 chains to the beginning," etc. It will be observed that this description completely omits the east and west call of 7.98 chains shown on our plat by the line C-D. The decree corrected this error by inserting the words "thence west 7.98 chains to a stone" between the north call of 40 chains and the south call of 19.11 chains to a stone. The decree further found that in some of the deeds there had been a mistake in the description on the north line of the land shown by the line C-D in that in some of them the call had been "thence west 14.03 chains to a stone," just before the south call of 19.11 chains when it should have been and was corrected to be, "thence west 7.98 chains to a stone." Nowhere in these proceedings was any issue made or decided as to the correctness of the north and south call "thence south 19.11 chains to a stone," shown by the line D-E on our plat. The corrected description given above, including the north and south call last mentioned, about which there never seems to have been any question, follows the title to this tract from the original patentee to the present owners and is that which appears in the lease now held by the Texas Company.

This lease was executed by Lissa B. Hawthorne and her husband, John E. Hawthorne, March 19, 1937, to Harry F. Corbin who assigned it to the plaintiff. It was executed on a standard printed form and contained full warranties of title. However, on being checked at the land office of the Texas Company it was discovered, apparently for the

first time, that the total of the north and south calls on the west side of the tract would not add up to enough to equal the 40 chains called for on the east side of the tract. In other words, the description lacked a fraction of a chain of closing. The lessors were requested to execute a corrected lease but refused to do so.

Thereafter, the lessors executed an oil and gas lease, and later a corrected lease, dated September 21, 1938, to D. M. Davison, one of the defendants, which purported to lease a tract beginning at a point 1254.42 feet north of the southwest corner of the southeast quarter of section 5, and running thence east along the north line of the Antioch church property a distance of 264 feet, and thence north 52.42 feet, and thence west 264 feet, thence south 52.42 feet to the place of beginning. It will be noticed that this lease is predicated upon the theory that the line D-E on our plat is exactly 19.11 chains in length, and that it does not extend south to the stone at point E. This lease was not upon a usual printed form but was fully typed and not only did not warrant any title but expressly provided against any warranty, containing the following provision: "Lessee hereby agrees that if the premises described in within lease are at the present time leased to any individual or corporation for the drilling of oil wells or the recovery of gas or oil from said premises then this lease shall be null and void and lessors shall not be required to pay back to lessee the sum of $10.00 as heretofore mentioned in this lease, or if it should appear that lessors do not hold or have title to said premises herein leased, or that said premises are at the present time leased, then this lease shall be null and void and lessor shall not be required to pay back said $10.00 heretofore mentioned in this lease to lessors, nor shall they be answerable in damages of any kind, character or nature for signing the within lease."

Under color of this lease defendant Davison and his associates immediately moved a rig onto the 52-foot strip and

commenced drilling for oil. Thereafter, on September 30, 1938, plaintiff filed its bill for injunction and other relief, claiming to be the lessee of the entire tract. A temporary injunction was obtained, but on final hearing this was dissolved, and on October 26, 1938, a decree was entered for the defendants from which the Texas Company has prosecuted this appeal.

The true boundary line of a tract of land is where it is actually run, and when marked by monuments placed by a surveyor or by the parties, such monuments will afford the most satisfactory evidence of the place where the true line lies. In case of any discrepancy between the call for course or distance and the location of the monument, the monument will control. (*Fisher* v. *Bennehoff,* 121 Ill. 426.) When a deed describes by admeasurements, and at the same time by known and visible monuments, the latter will govern. (*Fisher* v. *Bennehoff, supra.*) In *Lincoln* v. *McLaughlin,* 74 Ill. 11, we said: "This court has held so often, that we can hardly expect to be called on to repeat it, that both course and distance must yield to monuments placed, or natural objects when adopted as corners. And it is so plain that we need but state the proposition, that to close the survey it is only necessary to run from the last preceding corner to the place of beginning to close the call. That is the object to which the surveyor is required to run, without reference to the course or distance, unless a deflected line is called for and coincides with a line to that corner."

In *Westgate* v. *Ohlmacher,* 251 Ill. 538, we quoted with approval certain language of the late Mr. Justice Cooley used by him in *Diehl* v. *Zanger,* 39 Mich. 601, in part, as follows: "Nothing is better understood than that few of our early plats will stand the test of a careful and accurate survey without disclosing errors. This is as true of the government surveys as of any others, and if all the lines were now subject to correction on new surveys, the confusion of lines and titles that would follow would cause consterna-

tion in many communities. Indeed, the mischiefs that must follow would be simply incalculable, and the visitation of the surveyor might well be set down as a great public calamity." Without unnecessarily multiplying authorities, it is safe to say that the rule of applying a description of boundaries is, first, to natural objects; second, to artificial marks; and lastly, to courses and distances given. (*Fisher* v. *Bennehoff, supra.*) Landmarks and monuments are more ancient than surveying instruments, and have always been understood and respected, even from primitive times.

Appellees' brief does not cite a single authority, and on page 29 contains this statement, referring to the south line of the Farthing tract: "We cheerfully concede that it is a correct representation of the boundary lines of the Farthing tract as stated in the deed to Farthing's predecessors in title. But we just as cheerfully say that those lines have had no effect as boundary lines since the decree quieting the title in 1916."

We have above stated the substance of the proceedings to quiet title which appellees concede to be their sole reliance. As above pointed out there was no issue made as to the location of the southeast corner of the Farthing tract, and no such determination was either asked for or received in that suit. The north and south call of 19.11 chains *to a stone* remained the same after that suit as it always had been before, from the very earliest deeds. This single argument of the appellees ignores the obvious,—*i. e.,* that the rule for construing the decree of 1916 would be identical with the rule for construing a deed, and the monument would control over the distance called.

The record shows that the Texas Company secured leases on all that part of the Farthing tract which remains out of water, all of the church tract, and all of the Hawthorne tract which the Hawthornes leased to them by the only description they had ever known for their own land. It would not only be unreasonable, but fantastic, to suppose

that these transactions upon either side were predicated upon any theory of leaving a patch of ground the size of a town lot unleased. It is our conclusion that these leases were given with reference to and coincide with ancient and long-established landmarks and monuments. We hold that the plaintiff was entitled to the relief prayed for, and that the circuit court erred in dismissing the complaint.

The decree of the circuit court is reversed and the cause is remanded to that court, with directions to issue a permanent injunction as prayed, and for such other proceedings as are not inconsistent with this opinion.

*Reversed and remanded, with directions.*