MARI-MANN HERB CO., INC., *et al.*, Plaintiffs-Appellants, v. STEVEN BORCHERS *et al.*, Defendants-Appellees.

Fourth District   No. 4—90—0776

Opinion filed July 25, 1991.

Albert G. Webber, of Kehart, Shafter, Hughes & Webber, P.C., of Decatur, for appellants.

Richard L. Heavner, of Heavner, Handegan & Scott, of Decatur, for appellees.

JUSTICE GREEN delivered the opinion of the court:

This case involves a boundary dispute between adjoining landowners arising because of inaccuracies in metes and bounds descriptions of realty contained in deeds to those premises. The plaintiffs are Mari-Mann Herb Company, a corporation, and Michael L. King and Maribeth Barnett, owners of a tract of land in the southwest part of Decatur in Macon County. The defendants are Bath, Inc., owners of land adjoining that of plaintiffs, and Steven Borchers, the secretary of Bath, Inc. On June 22, 1990, plaintiffs filed an amended complaint against defendants in the circuit court of Macon County requesting that (1) defendants be enjoined from interfering with plaintiffs' use of property allegedly belonging to plaintiffs; and (2) plaintiffs be declared owners in fee of that property free and clear from claims by defendants.

Prior to filing their amended complaint, plaintiffs had sought and obtained, through stipulation, interlocutory injunctive relief preventing defendants from damaging a building lying partly on the disputed property. After an evidentiary hearing, the court entered an order on September 19, 1990, denying plaintiffs any relief and declaring defendant Bath, Inc., the owner of the area in question. That order stated the court reserved jurisdiction for 30 days to enable any of the parties to seek supplemental relief within that time. Pursuant to the

foregoing, defendants obtained an order on October 10, 1990, which required plaintiffs to remove from the property found to belong to defendants that portion of the building which encroached upon defendants' property. At the same time, the court denied a motion by plaintiffs for rehearing and, in the alternative, to limit defendants' relief, in regard to the encroachment, to damages at law. Plaintiffs have appealed the orders of September 19, 1990, and October 10, 1990.

We affirm the portion of the judgment denying plaintiffs affirmative relief and declaring defendant Bath, Inc., the owner of the questioned premises. We reverse the portion of the judgment requiring plaintiffs to remove the building from the existing premises. We remand to the circuit court with directions.

■ The first matter to consider is the trial court's ruling determining ownership of the disputed property. Plaintiffs rely mostly upon the evidence of a survey to support their claim of title. We conclude the evidence of the survey does not conclusively establish which party owns the property. No contention is made by either party of a prescriptive right to the land in question. Accordingly, this portion of the case must be decided upon evidence as to the intent behind the various conveyances involved. Based upon the evidence, the determination of the trial court that defendant was the owner of the property was not contrary to the manifest weight of the evidence. If plaintiff was not the owner, plaintiff was not entitled to injunctive relief.

The land in dispute and the surrounding land which belongs to the parties lies in or near the southwest part of Decatur and south of the Sangamon River. The Decatur to St. Louis line of the Norfolk and Southern Railroad lies east of the property in dispute and is adjacent to another tract owned by plaintiff. Some 100 feet farther east is State Route 48.

Prior to 1940, the adjoining property belonging to the parties was owned by Leland S. Beard. A 1940 deed from him to Clarence A. and Pauline F. Chapman severed that tract. Plaintiffs claim title by mesne conveyances from the Chapmans. That 1940 deed contained the following description of the land conveyed:

> "A tract of land in the Southwest ¼ Northeast ¼ *** Township Sixteen (16) North, Range Two (2) East of the 3rd P.M., more particularly described as follows:
>
> Beginning at the Southwest corner of the said Southwest ¼ Northeast ¼ Section 21, thence North 152 feet, thence East 676 feet, thence South 122 feet, thence *East 26.6* feet to Northwesterly side of a public road, thence Southwesterly along said Northwesterly side of public road 38.1 feet to the

South line of said [quarter quarter section] *at a point 665 feet west of the southeast corner of* said [quarter quarter section], thence East to center of public road, thence Southwesterly [into the Southwest Quarter of the Northeast Quarter of section 21 with further metes and bounds descriptions ending up at the place of beginning.]" (Emphasis added.)

The "East 26.6 feet" call is crucial to the decision in this case.

The following diagram, which is not drawn to scale, is furnished to illustrate the portion of the real estate described in the foregoing deed which is in the southwest quarter of the northeast quarter of section 21. All of the property which is in dispute is in that quarter quarter section. Point number (1) is the point of beginning and all of the other points are listed in the numerical order in which they appear. The land in dispute is a strip along the east border of the land shown in the diagram. The circuit court found that any land more than approximately 676 feet east of the line between points (1) and (2) belonged to defendant Bath, Inc.

The next four deeds in the chain of title to the property contained the same description and, more particularly, provided for the call between points (4) and (5) as shown on the diagram to be "East 26.6 feet." Then, on July 4, 1986, C.P. Lambert and his wife, then owners in joint tenancy, made a conveyance to Maribeth Dewein, now plaintiff Maribeth Barnett, and she, on August 3, 1989, made a conveyance placing the property in joint tenancy with her son, plaintiff Michael L. King. Each of these deeds used the same description as the prior deeds in the chain of title except that the call from points (4) to (5) was stated in these words:

"[T]hence *West* 26.6 feet (instead of *East* 26.6 feet as described in previous conveyances due to scrivener's error) to the Northwesterly side of a Public road ***." (Emphasis in original.)

Defendant Bath, Inc.'s land adjoins plaintiffs' land to the north and to the west to the extent that the land is in the northeast quarter of section 21. In 1940, Leland Baird had conveyed the land, through which defendants claim, to his daughter Lorraine and her husband Gordon Davis. Several further mesne conveyances were made before Bath, Inc., acquired title in 1962. Some language in the legal description in the last deed is consistent with the original call from point (4) to point (5) in plaintiffs' chain of title as being "East 26.6 feet." The descriptions in the prior chain of defendants' title are not specific enough to tell whether they are consistent with the boundaries set forth in plaintiffs' chain of title.

No evidence was introduced as to why the change in the call was made or as to how any scrivener's error had occurred. A title researcher testified she was unable to find any evidence of a survey of the land involved in these deeds until a survey made for plaintiffs by D. Wayne Shoemaker in 1987. That title researcher also testified concerning the chain of title of the various properties involved.

Shoemaker testified for plaintiff. He said he studied deeds, survey records, and plats. He had located an angle bar which was shown on some plat. This marker was on the west boundary of the quarter quarter section just south of the quarter quarter section containing the property shown on our diagram. This angle bar enabled him to tie in surveys of the portion of plaintiffs' tract in that quarter quarter section. Shoemaker also testified he had found a fence post at a point which served as a place of beginning for the description in the deeds to plaintiffs' land.

Shoemaker proceeded on the assumption the call from points (4) to (5) of "West 26.6 feet (instead of *East* 26.6 feet ***)" was appropriate. When he did so with his survey, he was unable to use the call of 676 feet for the distance from points (2) to (3), because doing so would place point (6) too far to the west, thus making the distance from point (6) to point (7), a quarter section corner, longer than the 665 feet stated in all of the deeds. Instead, he used a distance of 710.7 feet between points (2) and (3). Shoemaker correctly gave great significance to the fact that point (7) was an indisputably accepted corner in the same section as the land in question. Such corners control over directions and distance in legal descriptions of real estate. (*Ely v. Brown* (1899), 183 Ill. 575, 56 N.E. 181; *Winscott v. Cass Consumers Service, Inc.* (1975), 33 Ill. App. 3d 919, 339 N.E.2d 41.) In order to find the proper points (6) and (5), Shoemaker began by measuring 665 feet west of point (7) to find point (6) and worked backward on the description to locate other points.

Shoemaker also attempted to make a survey on the basis of the original call between points (4) and (5) of "East 26.6 feet" and found use of that call with 676 feet call from point (2) to point (3) would more closely conform to proper points (5), (6), and (8) than would the "*West* 26.6 feet" call. However, he stated "I still think [the position of those points] would be maybe four, five, six feet too far to the east." He also noted that the deeds described points (5) and (6) as being on the northwesterly side of a road and that the use of the "East 26.6 feet" call together with the 676 feet call between points (2) and (3) would place points (5) and (6) off that road.

Shoemaker's survey also gains credibility because he was able to "close" it. By that we mean he was able to follow the metes and bounds described beyond point (8) and reach the place of beginning at point (1). The courses and distances he used in doing so were consistent with the actual position of the angle bar which, as we have indicated, he found in the northwest quarter of the southeast quarter of section 21. We agree with plaintiffs that a description which can close is an essential element of a proper survey. *Texas Co. v. Hawthorne* (1939), 371 Ill. 468, 473, 21 N.E.2d 565, 568.

Defendants presented a survey by Philip Cochrane. He did not purport to close that survey but rather made it as a survey of the boundary between plaintiffs' property and that of defendant Bath, Inc. Basically, the survey went from points (1) to (8) using a 676 feet call between points (2) and (3) and running the call from points (4) to (5) in an easterly direction as in the earlier deeds. Cochrane concluded a proper fit would be made by having the call from points (4) to (5) run in an easterly direction for 15.91 feet. Cochrane's survey ended with finding the distance between point (6) and the corner at point (7) as 655 feet rather than the 665 feet set forth in all of the deeds. This survey lacked the verification which arises when the survey closes.

Despite the higher credentials of the Shoemaker survey, we cannot accept it as conclusive of the rights of the parties. It required a lengthening of the line between points (2) and (3) from 676 feet to 710.7 feet and required an acceptance of the theory that the earlier deeds in plaintiffs' chain of title, which indicated that the direction of the line from point (4) to point (5) was easterly were in error. No logical reason was presented as to why the proper position of points (5), (6), and (8) with reference both to the position of the corner at point (7) and the northwesterly side of the road upon which points (5) and (6) stood could not be reached by a call of 676 feet between points (2) and (3) and an easterly call of some distance of less than 26.6 feet between points (4) and

(5). Shoemaker did not try to do so but merely used the "East 26.6" measurement and was only four to six feet off.

Thus, if while using the 676 feet call between points (2) and (3), Shoemaker had used an easterly call some four to six feet less than the 26.6 feet prescribed for the call between points (4) and (5), a survey could likely have been completed which also would have closed. Under this survey, the deviation from the description common to all deeds in the chain of title would have been no greater than the survey Shoemaker adopted, which increased the distance between points (2) and (3), stated in all those deeds, from 676 feet to 710.7 feet. The testimony of the surveyors was difficult to follow from the report of proceedings, because they often failed to identify the particular places on their surveys to which they were referring. However, we have not found any evidence which indicated that points (3) or (4) had any physical features which identified those points. Accordingly, the circuit court properly found the survey evidence was not conclusive and decided to also consider other evidence bearing upon the intent of the various grantors and grantees in the chains of title to the two properties. *McLeod v. Lambdin* (1961), 22 Ill. 2d 232, 174 N.E.2d 869.

■ Although no question of prescriptive right of any of the parties is involved, most of the evidence of intent of the various owners of the property arises from the use of the disputed property. For many years, St. Louis Bridge Road has run parallel to and west of the Norfolk and Southern Railroad from the southwest along the southeasterly border of the tract plaintiffs purchased from the Lamberts. Most of the evidence indicates this road terminated on the north at the line dividing the north half and the south half of section 21. This is the same line upon which points (1), (6), (7), and (8) of the diagram are located, and the road terminates at point (8). However, at point (8), it intersects with a road known as Legion Drive, which extends to the east. For many years, Legion Drive crossed the railroad tracks, but that crossing has since been closed.

In 1978, prior to the purchase by plaintiffs of any land in the area, plaintiffs rented land from defendant Bath, Inc., on the south part of the latter's tract and in the area east of the east line of the land shown in the preceding diagram. Both individual plaintiffs testified to conversations they had with Webber Borchers prior to their purchase from Lamberts, in which Borchers told them the leasehold had no access to St. Louis Bridge Road, and they would have to get permission from Lamberts to cross the land to that road. Webber Borchers, now deceased, was the grandfather of Steven Borchers and the then owner and operator of Bath, Inc. The area in dispute includes

the land which would be that access. Plaintiffs maintain this constitutes an admission by Bath that it had not intended to acquire that land. Plaintiffs admit they put gravel on the area in dispute while tenants of Bath but testified they did so with permission from Lamberts.

In 1989, after plaintiffs' acquisition from Lamberts in 1986, plaintiffs did not renew their lease with Bath and, soon after, the dispute flared. Defendant Borchers testified that all persons had accepted boundaries he now claims until the dispute started. In deciding in favor of the defendants' right to the disputed property, the court placed particular emphasis on a theory that each of the grantors from Baird to Lambert must have intended that the tract now owned by Bath retain access at the south end. Plaintiffs maintain this reasoning is faulty, because in the 1940s and 1950s, no grantor had reason to believe the Legion Drive crossing would be closed and, thus, even without the questioned land, the Bath tract had access to the south.

The trial court could have disbelieved the testimony of the individual plaintiffs that Webber Borchers told them, in effect, that the disputed land was part of the Lambert tract and could have believed the general testimony that all parties dealt with the land in question as being part of the Bath tract. We do not find the trial court's reasoning that parties making conveyance would believe that a south access over the disputed land was necessary rendered its decision erroneous. The evidence supported the trial court's decision.

We call attention to a minor inaccuracy in the court's order of September 19, 1990, which defined the border between the properties. In that order, the court found Bath, Inc., was the owner of the east 34.07 feet of a tract, which generally contained the same description of boundaries as the deed through which plaintiffs claimed title. However, the court order, in defining the tract from which the west 34.07 feet was awarded to Bath, Inc., stated the distance from point (2) to point (3) was 711 feet and the call between points (4) and (5) went west rather than east. The effect of extending the north line of the tract defined to 711 feet and the awarding Bath, Inc., the east 34.07 feet was to conclude that the proper length of the line from point (2) to point (3) was approximately 675 feet as set forth in all deeds. However, both surveyors agreed that if the distance between points (2) and (3) was only 675 feet, and the call between points (4) and (5) went back to the west, point (6) would be much more than 665 feet from the corner at point (7). Thus, if the distance between points (2) and (3) was 675 feet, the call from point (4) to point (5) must go for some distance to the east. This would create a small triangle of property extending eastward from the farthest east boundary, which the court or-

der permitted. All survey testimony would require a conclusion that this land belonged to plaintiffs. This irregular piece of property would be so small and would create such irregularity in the border between the parties that we need not remand for correction of the order. As we will explain, the court shall consider this loss of property by plaintiffs upon remand.

■ As plaintiffs were not entitled to the property in dispute, they were not entitled to permanent injunctive relief to preserve that property. However, we hold that plaintiffs should not have been required to remove the encroaching building.

In *Terwelp v. Sass* (1982), 111 Ill. App. 3d 133, 443 N.E.2d 804, this court considered the equitable requirements which must be met before parties in the position of plaintiffs can properly be required to remove their encroaching structure. The court stated, "It is established that if an encroachment is unintentional and the cost for removing it is great, and the corresponding benefit to the adjoining landowner is small and damages can be had at law, courts will ordinarily refuse to grant injunctive relief and not require the offending party to remove the encroachment." *Terwelp*, 111 Ill. App. 3d at 138-39, 443 N.E.2d at 808.

In *Terwelp*, determining whether the evidence was sufficient to demonstrate that plaintiffs' encroachment was unintentional, the court looked to the case of *Stroup v. Codo* (1965), 65 Ill. App. 2d 396, 212 N.E.2d 518. There, the court indicated that in order for an encroachment to be considered intentional, it must be (1) deliberate in the sense that the owner either proceeded to construct it after notice of the encroachment, or (2) that in ascertaining the boundary, he so failed in the exercise of any appreciable precaution as to indicate a wilful disregard of the rights of the owner. Plaintiffs maintain the evidence here conclusively showed their conduct was not wilful.

Stipulations of the parties showed the cost to plaintiffs for removal of the building would be great. They agreed the cost of removal would be $27,885 and plaintiffs' business would be disrupted sufficiently to cause a loss of $45,000 in profits from sales. On the other hand, the undisputed testimony was that the total value of the property in dispute was only $2,500 and that of the property encroached upon was only $500. No showing was made that the building itself blocked access of the Bath tract to the south.

Evidence was presented that plaintiffs intentionally made the foundation of the building more firm after the court's ruling. However, considering all of the circumstances, we conclude the evidence does not support a finding the plaintiffs' violation was wilful. The

boundary evidence was uncertain, but plaintiffs proceeded on the basis of the only survey of the premises. The evidence also indicated that defendants did not immediately complain to plaintiffs about the existence of the building.

The portions of the orders on appeal determining rights in property and denying injunctive relief are affirmed. The supplemental order requiring plaintiffs to remove the building is reversed. The cause is remanded to the circuit court of Macon County to assess damages against plaintiffs King and Barnett and to otherwise do equity. (See *Terwelp*, 111 Ill. App. 3d at 139, 443 N.E.2d at 808.) In connection with performing this function the court may consider that by its decree the court has awarded defendant Bath a small triangular piece of land to which it was not otherwise entitled.

Affirmed in part; reversed in part and remanded with directions.

STEIGMANN and KNECHT, JJ., concur.