WILLIAM THOMAS

*v.*

DELIA SAYLES *et al.*

1. LOST BOUNDARY—*acquiescence.* When the boundaries fixed in original surveys are lost, the intentions and understanding of parties will be inferred from their long acquiescence in the location of line fences, and their occupancy on each side for a great length of time.

2. ADVERSE POSSESSION. When such adjustment of fences has existed without question for twenty years, title will have been acquired by adverse possession.

APPEAL from the Circuit Court of Morgan county; the Hon. CHARLES D. HODGES, Judge, presiding.

Mr. WILLIAM THOMAS, *pro se.*

Mr. HENRY E. DUMMER, for the appellees.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

The controversy in this case resolves itself mostly into a question of surveying.

The deed under which the appellant claims title to the land in controversy, through intermediate conveyances, is one from Thomas Church, the patentee of the land, (who is admitted to be the common source of title,) to Leander Filson, of the date of September 15th, 1832. If this deed includes the land in controversy, then the appellant is entitled to recover on his paper title. The description in this deed is this: " Beginning at a stake in the St. Louis road at the southeast corner of a lot of land conveyed to Newton Forsythe by Joseph Duncan, running south twelve poles to a stake in the road, thence west to a stake on the west line of the half quarter, thence north on said line twelve poles to the southwest corner of land conveyed by Duncan to Newton Forsythe, and thence east on said line to the place of beginning, containing six acres more or less."

The question arises upon the true position of the south line of this boundary.

The land in controversy is a very small portion of the land set out in the declaration, and described in the above named deed, it being a parcel adjoining this south line, extending from the west side east, half way across the half quarter section, being 43 feet wide at the west end and 41 feet at the east

end, and claimed by the appellant to be within, and by the appellees to be without, that boundary line.

It is not pretended that any of the stakes referred to in this deed from Church to Filson can now be found. No deed from Joseph Duncan to Newton Forsythe is to be found of record or otherwise.

The plaintiff, then, to ascertain the starting point for locating his land, measures on the east line of the half quarter section the width of the several parcels conveyed by Church, the patentee, and places the starting point at the southeast corner of these tracts, which would locate his southeast corner where he claims it to be, and a line west from which would include the land in controversy; or he would begin at the southeast corner, which he claims to have been admitted by Church as such, and which is the same as arrived at by the other mode, and run either north or west, which, according to the courses and distances of the deed, would give him the land.

The defendants contend that, to find the starting point of this six acres, there must be surveyed the lot of land conveyed by Joseph Duncan to Forsythe & Buckner, by deed dated February 8th, 1836, nearly four years after the date of the deed from Church to Filson, and make the beginning corner of the six acres at the southeast corner of this land conveyed by this deed—their counsel suggesting that probably there was in existence on the 15th of September, 1832, when the deed to Filson was executed, a title bond to Forsythe, or Forsythe & Buckner, from Duncan, which was referred to by Church as a conveyance.

The boundary of the land conveyed by this deed to Forsythe & Buckner, is as follows: "Beginning 52 poles, 13 links south of the northeast corner of the half quarter, running west 32½ poles, thence south (67 degrees west) 52 poles to the west line of the half quarter, thence south on said line 7 poles and a half link to a stake, thence east across the tract to the east line, thence north 29 poles 16 links to the beginning."

In regard to which boundary it is not pretended any stakes or monuments can be found.

Taking the southeast corner of the lot of land described in this latter deed as the starting point, as found by running the lines as described in that deed, and surveying the land described in the deed from Church to Filson, one surveyor found the description in the latter deed not to include any part of the land in controversy; the other that it does include a small triangular piece 2⅓ feet wide on the west line, and terminating in a point 430 feet east. They both found there was a mistake in the deed from Duncan to Forsythe & Buckner in the description of the length of the last line, to-wit: " thence north 29 poles 16 links to the place of beginning," one making it 27 poles and 8½ links, and the other 3 poles short.

The evidence of Filson shows that, at the time of his purchase from Church of the six acres in the fall of 1832, there was a fence on or near the north line of the six acres; that shortly after, that fence was removed by Church to, as he said, the south line of the six acres, to be a division fence between them; that the witness had an agreement with Church that the latter should have the line run by a surveyor; that Church told the witness that he had the line run, and that the fence was on the line.

The evidence fairly shows that fence remained unchanged until some time subsequent to 1859 or 1860, when it was removed by Cassell, the ancestor of the defendants, from the west half of the lot about 40 feet north of its former site; and that, up to the time of such removal, there had been, on the part of Filson and those claiming under him, a continuous and uninterrupted possession of the land on the north to the line of the fence; and on the part of Church and those claiming under him, a like possession of the land on the south to the line of the fence.

The east end of the fence, the point which the county surveyor, McPherson, witness for the plaintiff, established as the

southeast corner of the six acres, seems to have been recognized and clearly acquiesced in as the true corner by those under whom defendants claim; and for aught that appears from the evidence, the division fence was acquiesced in as being the correct line, except that in 1851 the county surveyor, Rout, in surveying and platting the land on the south side of the fence as an addition to the town of Jacksonville, for the heirs of Thomas Church, found the fence was not on the north line of the addition as he made it, his line making a " gore " with the fence, the " gore " starting from a stone on the St. Louis road at the east end of the fence, as he thinks, and at the other end of the fence his line left the fence about a rod—the " gore " was not in his plat of the addition, but north of it, and was claimed, he thinks, by the heirs. And in 1859 or 1860, Cassell, while admitting the southeast corner to be correct, insisted that the line from that corner ran north of west to where he subsequently, as before stated, removed the fence.

Without considering whether the subsequent deed from Duncan to Forsythe & Buckner is to be considered as the one referred to as a deed from Duncan to Newton Forsythe, we are of opinion that admitting it to be so, reliance is not to be had solely upon the survey of the tract therein described, in order to find the starting point for the survey of the six acres in question, but that the acts, admissions and long acquiescence of those under whom the defendants derive title, in regard to the position of the southeast corner of the six acres, must be taken as having a conclusive effect upon the question of the position of that corner. Had the original stake placed in the road as the southeast corner been found, it must be admitted that would have controlled as to the location of the corner. Of hardly less significance, in locating this corner, do we regard the recent act of Church, after the conveyance, in removing the fence from the north line of the six acres and placing it upon the south line, under the circumstances in evidence, as the division fence between the six acres and his remaining land on the south. Filson, too, testifies that he was

satisfied at the time that the fence was on the line at the east end.

The evidence fixes with reasonable certainty the point upon the east line where the fence commenced to run west; it is the one established by McPherson as the southeast corner, and marked upon his plat "G." This we think must be taken as the southeast corner. The call in the deed is for a line running thence west to the west line of the half quarter; and this is to be taken as the south line of the boundary.

As to the effect to be given to the recognition of and acquiescence in a boundary line, see *Jackson* v. *Widger*, 7 Cow. 723; *McCormick* v. *Barnum*, 10 Wend. 104; *Yates* v. *Shaw*, 24 Ill. 367; *Makepeace* v. *Bancroft*, 12 Mass. 469.

And to the extent of the line of the fence, as originally placed by Church, title would seem to have been acquired by an adverse possession of twenty years.

The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*