## AUGUST BAUER

### *v.*

## GUSTAV GOTTMANHAUSEN.

1. BOUNDARY LINE—*original location governs.* The true boundary lines of a lot in a city are where they were actually run, and where they were marked by the monuments placed by the surveyor to indicate where they may be found; and the most satisfactory evidence of the place where the true lines were located, is afforded by the original stakes. The monuments must necessarily control the field notes and map of the survey, as well as calls for course, distance and quantity.

2. LIMITATION—*to dispute boundary line.* Where it appeared that, in the original survey of a tract of land into city lots, the surveyor, by mistake, located the north line of the south lots ten feet too far north, thus giving the south lots ten feet more in width than the others; and the several owners took possession and fenced according to the original stakes, and that the landlord of the plaintiff, and those under whom he claimed, had been in the open, visible and actual possession of the north half of a lot, some distance from the south line of the addition, for more than 20 years continuously by themselves and tenants: *Held*, that, under the statute of limitations, this possession was amply sufficient to fix, indisputably, the boundaries of an actual possession, and to bar all entries, except as to those under the statutory disabilities, and to bar any claim of an adjoining owner to enforce an apportionment of the surplus of the south lot, and thus change the boundaries.

3. EXCESSIVE DAMAGES—*trespass quare clausum fregit.* Where the defendant, in a wanton, illegal and unwarranted manner, attempted to take the law into his own hands, and deprived the plaintiff of his rightful possession of a strip of ground, and thereby injured his business: *Held*, that a verdict for $500 in favor of the plaintiff, in trespass *quare clausum fregit*, was not excessive.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM A. PORTER, Judge, presiding.

Mr. JOHN BORDEN, for the appellant.

Messrs. NISSEN & BARNUM, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action *quare clausum fregit*, brought by appellee, in the Superior Court of Chicago, against appellant. Defendant pleaded *liberum tenementum*, and thereupon plaintiff new assigned and described the close by metes and bounds, which was a strip of ground on the north side of the close, being seven feet in width at the west end, on Clark street, diminishing in width to five feet at its western extremity. To the new assignment defendant pleaded not guilty and *liberum tenementum*, to the latter of which plaintiff in error replied 20 years possession of *locus in quo*. Issues were formed on the

pleadings, and a trial was had by the court and a jury, resulting in a verdict and judgment of $500 in favor of plaintiff, and the defendant appealed to this court.

It appears that both parties claim title to adjoining premises, from a common source, and this litigation involves the boundary line between their premises, in lot 22 of Bronson's addition to Chicago. Appellant, who owns the north half of the lot, claims the strip as belonging to his half, whilst appellee claims that it belongs to the south half of the lot.

It appears that one Mulschlechner conveyed to appellant the north half of the lot, describing it as $49\frac{1}{2}$ feet front, and conveyed to appellee's landlord $24\frac{1}{2}$ feet in width on the north side of the south half of the lot. Appellee had an unexpired lease from year to year, and the year for which he was in did not expire until the 29th of April, 1872, at the time the trespass is claimed to have been committed.

The controversy arises upon the true location of the central line dividing the lot, appellant claiming that it runs along the south line of the strip, whilst appellee contends it is the north side of the strip.

Bronson's addition embraces a quarter section of land, and was surveyed and platted in 1843–4, by one Bradley, a surveyor. He testifies that, before the addition was made, Bronson, through his agents, sold parts of the quarter lying along Clark street; that when such sales were made, he surveyed and staked such lots, and such purchasers took possession, fenced and cultivated their lots. He says he sub-divided and platted the addition, and, in doing so, platted and numbered the lots previously sold; that after the plat was recorded, he, in 1845, discovered that he, by mistake, or some other person by design, had placed the stake on Clark street for the north line of lot 28 ten feet farther north than called for on the plat; that he had taken the stake as a starting point in surveying the lots lying north of lot 28, in sub-dividing the quarter section.

It thus appears that all the lots, including 22, lying north of lot 28, were located ten feet farther north on Clark street than is shown by the plat; but when the mistake was discovered, he says, it was regarded as unimportant, as the ten feet of excess in lot 28 was not considered of sufficient value to justify an alteration in the map, and in having it again recorded.

There were placed at the corners and at the center of the line of each lot, on Clark street, cedar stakes; and the various purchasers fenced their lots on the lines indicated by these stakes, and as late as 1870 the stakes were found at the proper places, and the fences conformed to them as the proper corners.

The fences on this lot were erected from 25 to 28 years before the trespass complained of in this suit; and, with the exception of the fence on the north line of lot 22, which was moved in on opening a street, the fences have been continuously maintained on the original line where they were first placed, until burned by the fire of October, 1871.

It appears that Mulschlechner, in 1860, with Bradley, found that the original corner stakes to this lot corresponded with its exterior fences, and then placed a fence precisely half way between the north and south lines of lot 22, which is on the north side of the strip in dispute. After the middle fence was destroyed by fire, it was replaced; but appellant, insisting that the surplus thrown into lot 28 should be distributed among the lots lying north of it, determined to appropriate it to his own use, and brought suit in ejectment against appellee, to recover the strip, but whilst that suit was pending and undetermined, appellant removed the fence and took possession of the strip.

The true boundary lines of lot 22 are where they were actually run on the ground, and where they were marked by the monuments placed by the surveyor to indicate where they would be found; and the most satisfactory evidence of the

place where the lines were located, is afforded by the original stakes. The monuments must necessarily control the field notes and map of the survey, as well as calls for course, distance and quantity. *McClintock* v. *Rogers*, 11 Ill. 296. This rule has been repeatedly and uniformly held by this court in a number of other cases, and must be regarded as the settled law.

The evidence in this case seems to establish, beyond all reasonable doubt, that the fences were placed around this lot on the true lines as actually run and established by the surveyor, when he divided and platted the addition; and if so, then the landlord of appellee, and those under whom he claimed, were the owners, to the extent and according to the original survey of that lot, and they may hold and enjoy the property according to the lines then fixed; and there is no doubt that, in 1860, the line dividing this lot, and according to which appellant purchased the north half of the lot, was placed just half way between the north and south lines of the lot, and was appellant's south line. Treating it as such, there is no complaint that appellant has not within these boundaries every inch he purchased and paid for when he received his deed. We have no hesitation in saying that the evidence shows the north line of the strip in controversy is appellant's south boundary of his lot.

Again, the landlord of appellee, and those under whom he claimed, are shown to have been in open, visible and actual possession for more that 20 years continuously by themselves or their tenants. This, under the statute of limitations, is amply sufficient to fix, indisputably, the boundaries of an actual possession, and to bar all entries where there is no one within the savings of the statute in favor of persons under disabilities.

It has been held that, where parties agree upon a boundary line between them, and enter into possession according to that line, they are thereby concluded from afterwards disputing

that it is the true line, even where the statute of limitations has not run. *Crowell* v. *Maughs,* 2 Gilm. 419; *Yates* v. *Shaw,* 24 Ill. 367; *Smith* v. *Hamilton,* 20 Mich. 433.

The evidence shows, in this case, that the owners adjoining this lot erected their fences on what was supposed to be the true boundaries to these lots, and have recognized and acquiesced in such boundaries as the true lines for the longest period required by our limitation laws, and they must be bound by them. Hence, they, or any one of them, or their grantees, can not claim and enforce an apportionment of the surplus in lot 28.

The evidence satisfactorily shows that appellee was in possession of the ground in dispute, and, hence, had the right to sue for and recover damages for an invasion of his possession; and we are not prepared to say that the damages found by the jury are excessive.

Appellant, in a wanton, illegal and unwarranted manner, attempted to take the law in his own hands. He has deprived appellee of his rightful possession of the ground, injured his business, and has so acted that the jury were warranted in finding punitive damages; and, all the facts considered, we do not regard the damages too large.

The instructions given for appellee are in harmony with the views here expressed, and were proper. Those asked by appellant, and refused by the court, are opposed to the rules we have herein announced, and were properly refused.

Perceiving no error in this record, the judgment of the court below is affirmed.

*Judgment affirmed.*