THE CITY OF MT. CARMEL '

*v.*

MARY A. E. McCLINTOCK *et al.*

*Filed at Mt. Vernon January 14, 1895—Rehearing denied May Term, 1895.*

1. EVIDENCE—*burden of proof as to disputed ownership of street.*   The burden is upon a city to show that land which has been for many years in the open, notorious and undisputed possession of an abutting owner is really a part of a street.

2. SAME—*evidence of acquiescence to overcome recent survey.*   The maintenance of a fence between a lot and the street for many years, and occupying and improving the lot in accordance therewith, with the city's acquiescence in the boundary line so established by maintaining a sidewalk in accordance therewith, must be given great weight in determining the location of the line, and may properly outweigh a recent re-survey, made on the theory that errors were committed in the original survey.

3. BOUNDARIES—*actual location of, by parties, will prevail.*   The actual location of the boundary between an abutting lot and the street, whether it was in accordance with an error of survey or not, must prevail after lots have been sold and held for many years in accordance therewith.

4. SAME—*fence may be a controlling monument in determining.*   A fence which has stood for many years on the line of a street as it was established when originally surveyed, is a fixed monument, which will control the distance between that and the other end of the lot.*

---

*The conflicting authorities as to adverse possession in case of mistake or ignorance respecting boundary are presented in a note to *Preble* v. *Maine Central Railroad Co.* 21 L. R. A. 829.

WRIT OF ERROR to the Circuit Court of Wabash county; the Hon. S. Z. LANDES, Judge, presiding.

M. F. HOSKINSON, and GEORGE P. RAMSEY, for plaintiff in error.

MUNDY & ORGAN, for defendants in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was a bill in chancery, brought by Mary A. E. McClintock and Marcus D. McClintock, her husband, against the city of Mt. Carmel, for an injunction. The bill alleges, in substance, that the complainants are the owners of lot 455 and a part of lot 453, in the city of Mt. Carmel, lying on the north side of and adjacent to Eighth street, and occupy the same, with their family, as their homestead; that the city threatens and is about to tear down the complainants' fence, cut down their valuable shade trees of many years' growth, dig away the soil of their lots and lay a sidewalk thereon, and thus take a part of the complainants' premises for a public street and for public use without making them just compensation therefor; that the acts thus threatened by the city will cause the complainants irreparable damage; that Eighth street, between the complainants' fence and the south line of the street, is more than eighty feet in width, and that, without including any portion of the complainants' grounds or their shade trees, it is amply wide enough for all public or city uses, both for street and sidewalks, and that there is therefore no necessity for taking the complainants' grounds or shade trees in improving the street or sidewalks.

The answer admits the ownership of the lots in question by the complainants, but denies that the land upon which the city is proposing to lay its sidewalk, and from which it proposes to remove the fence, shade trees and soil, is a part of those lots. It admits that the city proposes and is about to take down the fence in front of the

155—39

complainants' dwelling house, cut away the shade trees, dig up the soil and put down a sidewalk, but alleges that the land which it proposes to occupy in that manner is a part of Eighth street and not a part of the complainants' lots, and that the complainants have built the fence and set out the shade trees in question in Eighth street without the permission of the city; that the city, through its city council, in the exercise of its discretion, for the purpose of making a sidewalk of sufficient width for the use of the public along and upon Eighth street, in front of the complainants' property, has provided, by ordinance, that such sidewalk be built six feet wide, upon a regular grade, and that the line of the sidewalk be placed upon the line of the street; that in building the sidewalk in that manner it becomes necessary to remove the fence and shade trees in question as the same are standing on the street, and that for the purpose of making a regular grade line at the point opposite the complainants' property it will be necessary to remove the soil from the place where the sidewalk is to be built.

A replication having been filed, the cause was heard on pleadings and proofs, and at such hearing the court found the equities of the case to be with the complainants, and entered a decree awarding them a perpetual injunction, in accordance with the prayer of the bill. To reverse that decree the city has brought the record to this court by writ of error.

The ground in controversy consists of a strip about six feet in width off from the front of what the complainants claim as their property, and one of the leading questions in the case is, whether, under the evidence, that strip of ground is to be regarded as a part of the street or a part of the complainants' lots. The circuit court, passing upon this question as a question of fact, found in favor of the complainants, and we are called upon to determine whether this finding is clearly against the preponderance of the evidence. The ground in dispute

being, and for many years having been, in the open, notorious and undisputed possession of the complainants and their grantors as forming a part of their premises, the burden is clearly upon the city to establish the fact, by satisfactory evidence, that it is really a part of the street, and unless it has done so the finding of the circuit court on this question must be sustained.

The original town of Mt. Carmel, or at least that part of it which includes the lots and street in question, seems to have been laid out and platted as early as the year 1822, but as that plat was admitted to record without the necessary authentication, the owners of the land, acting through their attorney in fact, for the purpose of remedying whatever imperfections there may have been therein, made out, executed, acknowledged and recorded a new plat, such new plat being recorded June 15, 1829. That plat, a copy of which appears in the record, contains on its face, so far as we are able to find, no memoranda indicating the width of the streets or the size of the lots or blocks, but a general memorandum appears endorsed on the back of it, stating the widths of the streets and alleys and the size of the blocks, but nothing as to the size of the lots. Each block, however, is divided into eight lots, which are apparently of equal size.

The evidence shows, without any material conflict, that the complainants and their immediate and remote grantors have been in the undisputed possession of the lots owned by them, including the disputed strip of ground, for somewhere between thirty and forty years. At least thirty or thirty-five (and one witness says forty) years ago the complainants' remote grantor built a fence in front of these lots as a division fence between the lots and the street, and that fence, ever since it was originally built, has been and still is maintained at the same place. During all that time the complainants and their grantors have occupied the premises to the fence, claiming the same as being all included within and forming a

part of their lots, and about twenty years ago the com-
plainants set out the shade trees in question, inside of
the fence and about two feet distant therefrom.    It also
appears that many years ago, the exact date not being
ascertained by the evidence, the city laid down a side-
walk in the street along and adjacent to the fence, and
afterwards maintained such sidewalk until after the pas-
sage of the recent ordinance, under which it is now pro-
posing to remove the complainants' fence and take about
six feet from their inclosure for the purpose of relaying
the sidewalk thereon.

It appears from the evidence that none of the stakes
or other monuments established by the surveyors who
made the survey at the time the town of Mt. Carmel was
originally platted are now to be found nor can their pre-
cise location be ascertained.    Under these circumstances,
the conduct of the owners of the lots in building and
maintaining a division fence and occupying and improv-
ing their lots in accordance therewith, on the one hand,
and that of the city in building and maintaining its side-
walk for many years in accordance with the boundary
line so established, must be given great weight in deter-
mining the location of the line.    In *Thomas* v. *Sayles,* 63
Ill. 363, it was held that, where the boundaries fixed in
original surveys are lost, the intentions and understand-
ing of parties will be inferred from long acquiescence in
the location of line fences, and their occupancy on each
side for a great length of time.    The rule is a familiar
one that owners may settle a disputed boundary by
agreement, and that such settlement, followed by pos-
session, binds them, not as passing title, but as an estop-
pel determining the location of an existing estate.    *Yates*
v. *Shaw,* 24 Ill. 368; *Crowell* v. *Maughs,* 2 Gilm. 419 ; *Bauer*
v. *Gottmanhausen,* 65 Ill. 499 ; *Cutler* v. *Callison,* 72 id. 113 ;
*Kerr* v. *Hitt,* 75 id. 51; *McNamara* v. *Seaton,* 82 id. 498 ; *Hub-
bard* v. *Stearns,* 86 id. 35 ; *City of Bloomington* v. *Bloomington
Cemetery Ass.* 126 id. 221; *Grim* v. *Murphy,* 110 id. 271; *Darst*

v. *Enlow,* 116 id. 475.   In *Fisher* v. *Bennehoff,* 121 Ill. 426, it was held that the adoption of a boundary line may be implied from acts and declarations, and acquiescence therein.   So, also, in *McCormick* v. *Barnum,* 10 Wend. 105, the principle was laid down that where parties agree upon a division line, either expressly or by long acquiescence, such line will not be disturbed.

It will not be necessary in this case to determine whether the city should be held to be concluded, either by way of limitation or estoppel, by its acquiescence in the boundary line established and maintained by the complainants and their grantors for over thirty years, it being sufficient, for all the purposes of this decision, to note that such acquiescence on the part of the city is evidence, and evidence of no little cogency, tending to show that the fence was erected, and has since been maintained, on the line between the lots and the street, as the same was established at the time the town of Mt. Carmel was originally laid out and platted.

To rebut this evidence, and to show that the line between the lots and the street is, and ever since the original plat was made has been, some six feet north of the fence, the city introduced in evidence a corrected survey and plat of the original town of Mt. Carmel, made for and at its instance by a surveyor, on or shortly prior to August 6, 1891.   This re-survey, so far as appears, was wholly *ex parte,* and there is no pretence that it was a part of any judicial proceeding to establish a disputed boundary.   The nature of the re-survey, and the circumstances under which it was made, are best shown by the surveyor's report to the city council, which appears endorsed upon the plat, as follows:

"I herein submit to your honorable body a report, with plat, of my re-survey of such part of Mt. Carmel as is shown on the within plat.   After a careful examination of all prints that could be found of surveys made since the original survey of the city, I found most of them dif-

fering materially from one another, and all conflicting seriously with the original survey, as indicated by the most ancient buildings, all of which I carefully compared, and while I found some difference among them, yet I found a degree of harmony which gave abundant evidence of the original survey. It is clearly evident that a badly adjusted chain has been used in the original survey, leaving a considerable surplus in each block, which I have proportioned among the blocks, according to the best evidence to be had of the original, as shown on the accompanying plat. I planted at the intersection of the center line of each of the streets, as shown on the map, a wrought iron pin, one and a half inches in diameter and thirteen inches long, indicated on the map by a black dot enclosed by a circle."

The surveyor who made this re-survey and plat was examined as a witness, and his account of the survey and the principles upon which it was made, as stated by him on the witness stand, is entirely in harmony with his report as endorsed on the plat. By this re-survey the front line of the complainants' lots was placed about six feet north of their fence. It seems plain, both from the surveyor's report and testimony, that this re-survey was not made in pursuance of an attempt to identify and relocate the lines of the streets and lots as those lines were established by the original survey, but that having discovered what he regards as an error in the original survey, resulting, as he conjectures, from the use of a badly adjusted chain, making each of the blocks considerably larger than it would have been if the survey had been made with a properly adjusted chain, the surveyor attempts to correct the error, and to distribute the surplus in accordance with such principles as he thinks most equitable.

It seems clear that a re-survey made on these principles comes far short of proving that the line between these lots and the street was not in fact run and estab-

lished at the place where the complainants' grantor subsequently built his division fence. It may be that the chain used in making the original survey was badly adjusted, and that by reason of such improper adjustment the block was made larger than it otherwise would have been, and that, as a consequence, the north line of Eighth street was located six feet further south than an accurate survey would have placed it. But such error is now wholly immaterial. The question is where the line was actually run and established, and if its location can be ascertained by any competent evidence, it is not important whether such location was the result of an error or not. After the lots have been sold and held these many years according to the original survey, it is too late to insist upon any correction of the survey, however erroneous it may have been.

As held in *Bauer* v. *Gottmanhausen*, 65 Ill. 499, the true boundary lines of a city lot are where they are actually marked by the monuments placed by the surveyor to indicate where they are to be found, and the most satisfactory evidence of the place where the lines were located is afforded by the original stakes. The monuments must necessarily control the field notes and maps of the survey, as well as courses, distances and quantity. In determining, then, in the present case, where the line was originally run and where the original monuments were placed, we have, on the one hand, a division fence erected by the lot owners on what was claimed to be the line between the lots and the street, and the maintenance by them of such fence as a division fence for over thirty years, together with actual possession by them of the lots up to the line thus established, and at least tacit acquiescence by the city for the larger portion of that time, by the erection and maintenance of street improvements in accordance with such line; and we have, on the other hand, a recent re-survey, made upon the theory that errors were committed in the original survey, and in

which an attempt was made to correct such errors and to make equitable distribution of the surplus of land thus found to exist. It was for the circuit court to determine, in the light of all the facts disclosed by the proofs, which of these two sources of evidence was most satisfactory and reliable, and it having decided in favor of the former, we are unable to see that it was not fully justified in so doing.

The claim made on behalf of the city that the distance from the fence in question to the line of the alley in the rear of the lots is greater, by several feet, than the assumed depth of the lots, is by no means conclusive that the strip of ground in dispute is not a part of the lots. Aside from the fact, already adverted to, that the size of the lots is not given on the original plat, but only the size of the blocks, the rule already mentioned, that fixed monuments will always control courses, distances and quantities, leads to the result that, if the fence, as it now stands, is on the line between the lots and the street as that line was established in the original survey, (and the evidence clearly tends to show that it was,) the strip of land in dispute is shown to be a part of the lots, although the distances and quantities indicated by the plat are thereby increased.

We are of the opinion, then, that the circuit court arrived at a correct conclusion, from the evidence, in finding that the strip of ground on which the complainants' fence and trees are standing is a part of their premises, and in perpetually enjoining the city from taking the same as a part of the street. The decree being the proper result from all the evidence, it will be affirmed.

*Decree affirmed.*