### B. F. Tinnea v. August Piel.

1. BOUNDARY LINES—*when original survey prevails.* The true boundary lines of a subdivision are those established by the original survey with respect to which purchases and sales have been made, notwithstanding the surveyor who laid out the subdivision made a mistake in some of his measurements and in locating some of the lines.

Action of forcible entry and detainer. Error to the Circuit Court of Effingham County; the Hon. WILLIAM M. FARMER, Judge, presiding.

Heard in this court at the February term, 1905. Reversed, with finding of facts. Opinion filed September 8, 1905.

S. F. GILMORE and F. W. LOY, for plaintiff in error.

J. ZIMMERMAN, for defendant in error; WOOD BROS. & RICKELMAN, of counsel.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

It appeared from the proofs in this case that F. W. Loy was formerly the owner of the south two-thirds of the southwest quarter of the southwest quarter of section No. 12, township 7 south, range 7, east of the third principal meridian, adjoining the town of Dieterich in Effingham County, and that on April 27, 1896, he caused the same to be surveyed and platted by C. A. Van Allen, a surveyor; that the plat was duly certified by the surveyor, acknowledged by Loy, approved and accepted by the town authorities and afterwards on May 5, 1896, filed and recorded in the office of the recorder of said county. The plat shows, on the north side of said tract, five blocks running from east to west numbered from one to five consecutively. These blocks were divided from others on the south by Myra street, running east and west, and blocks 1 and 2 were divided by Vine street which ran through the addition from north to south. Block No. 1 was 320 feet, blocks 2, 3, and 4, 222 feet each, and block 5, 254 feet, east and west. Vine street was fifty feet wide and the street on the west thirty feet, making a total of 1320 feet, the usual distance across a forty-acre tract of land, and all of said blocks were 150 feet north and south. The surveyor was assisted in laying off the addition by Tinnea and two other men. The outside corners of the addition were marked with rocks as monuments, while at the corners of the lots, seasoned wagon spokes were driven down. About a week after the survey Tinnea bought blocks 2, 3 and 4 and within two weeks thereafter inclosed the same, determining the boundaries of the lots by the wagon spokes driven under

the direction of the surveyor.   Tinnea sold the first 100 feet west of Vine street, which was the east line of the blocks bought by him, to Frank Clare.   He then sold 122 more to his son-in-law, Allen, and afterwards, about January 1, 1901, he sold the next 100 feet to Piel, defendant in error.   Tinnea and Piel went upon the ground together and measured the premises.   Starting at the stake set by the surveyor at the northeast corner of block 2, they measured west 222 feet for a starting point, which would bring them to the northeast corner of block 3 according to the plat, then measured off 100 feet east and west by 150 feet north and south.   Piel took possession of the place at once and commenced the work of building a house upon it.   Some six months latter Piel bought of Tinnea fifty feet more east and west adjoining his first purchase on the west.   On August 15, 1901, Tinnea and his wife executed and delivered to Piel a warranty deed to the property, describing it as follows :   " Commencing at a point of the northeast corner of block number two (2), thence running west two hundred and twenty-two (222) feet to the place of beginning, thence south one hundred and fifty (150) feet, thence west one hundred and fifty (150) feet, thence north one hundred and fifty (150) feet, thence east one hundred and fifty (150) feet to the place of beginning, all in block number three (3) in Loy's Addition to Dieterich."

When he purchased the additional fifty feet Piel took possession of that also and has ever since that time been in possession of the whole tract, 150 feet square, supposed to be described by the deed.   According to the deed all of the premises named therein should have been in block No. 3 aforesaid.   Some time after the execution of the deed, a dispute arose concerning the location of Vine street and the village board caused a survey of a part of Loy's addition to be made by W. E. Lugenbeel, a surveyor, for the purpose of ascertaining the correct location of that street. Lugenbeel professed to find that while Vine street was properly located by the surveyor Van Allen at the south end, commenced directly at that point to deviate towards

the east, and at the north end was fifty-three feet too far east, the result being to locate the northeast corner of lot two, fifty-three feet further east than it was located on the original plat and the southeast corner some forty-three feet further east. If the survey was correct, a portion of the tract measured off and located by Piel and Tinnea, and of which Piel was in possession under his deed from Tinnea, fifty-three feet wide at the north end and forty-three feet at the south end, would be located in block 2 instead of block 3 and if Piel was to have all his lot in block 3, the lines must be moved that much further west, encroaching to that extent upon land still owned by Tinnea.

On April 25, 1903, Piel brought suit against Tinnea in forcible detainer for premises described by him as follows: "A strip of ground forty-three (43) feet on south side and on north side fifty-three (53) feet wide east and west and one hundred and fifty (150) feet long north and south off the west end of that portion of block three (3) in Loy's addition to the town of Dieterich, Effingham County, Illinois, known as and being said block three (3), excepting a strip of land seventy-two (72) feet wide east and west and one hundred and fifty (150) feet long north and south off the west end thereof," of which it was said in the affidavit Tinnea was unlawfully withholding the possession from said Piel.

Afterwards on the 17th day of October, 1903, Piel caused a survey to be made and the premises in question to be located by George T. Austin, deputy county surveyor. In measuring the north line of the blocks in question, Austin commenced at the northwest corner of the addition, and ran east. He substantially agreed with the Lungenbeel survey but claimed to find that the stone which was said to be the northeast corner of the addition, was thirty-three feet and four inches east of the northeast corner of block 1, and four feet north of the line.

Upon the trial in the Circuit Court a verdict was rendered in favor of plaintiff, and it was followed by a judgment that he recover and be restored to possession of the premises

for which he brought suit, and that he have judgment
against the defendant for costs.    To review that judgment,
the defendant below brings the suit to this court by writ
of error.

This suit was brought under the 6th subdivision of sec-
tion 2 of the Forcible Entry and Detainer Act, which pro-
vides that, a person entitled to the possession of lands or
tenements, may be restored thereto, when the " lands or
tenements have been conveyed by any grantor in possession
*   *   *   and the grantor in possession   *   *   *   refuses
or neglects to surrender possession thereof, after demand
in writing by the person entitled thereto or his agent." The
title to the premises is not involved in this suit, but simply
the right of possession.    When Piel purchased of Tinnea,
the stakes marking the lots were still in existence, as they
were at the time when Tinnea made his purchase from Loy.
Tinnea and Piel found the stakes and measured the premises
in a manner satisfactory to both of them and Piel went
into possession of the lands measured off by them and has
since remained in possession thereof.    According to the
original survey he is in possession, not only of the land he
thought he had purchased, but of the land he actually pur-
chased.    But the claim of Piel is that there was a mistake
in the original survey in the location of the stakes and
therefore the lines of Vine street north of Myra street and
blocks 2 and 3 should be moved west some fifty-three feet
on the north side and forty-three feet at Myra street.    Ac-
cording to plaintiff's witness, Austin, the deputy surveyor
who made the last survey, the north line of the plat over-
ran some thirty-three feet and four inches, that is there
were thirty-three feet and four inches more in the north
line across the addition, than the blocks and streets called
for.    It would therefore make a decided difference whether,
in measuring the north line to mark the lots and streets, a
commencement was made at the northeast corner or the
northwest corner of the addition.    It is also to be noted
that on the plat of the original survey made by Van Allen
the corner stone used as a monument, is located twenty feet

west of the corner where he started.   If that is the stone
found by Austin whose line stopped thirty-three feet and
four inches west of the northeast corner, then a difference
of a little over fifty-three feet is accounted for and had Mr.
Austin commenced his survey at a point twenty feet east of
the stone in question, his lines and Van Allen's would have
been substantially the same.   However, that question is not
controlling, as in our opinion it is immaterial, so far as this
case is concerned, which survey, if any, of the three, was
absolutely correct.   The addition was laid off and the cor-
ners of the blocks established by Van Allen and the blocks
covering the land in question, were sold to Tinnea by the
corners so established.   In the sale by Tinnea to Piel, the
same corners were relied upon by both parties and the
measurement of the land sold was made from them.   The
true boundary lines of the blocks were those established by
the surveyor, who laid out the addition and placed the
monuments and the lines so marked must prevail even
though the surveyor may have made a mistake in some of
his measurements and in locating some of the lines.

In Bauer v. Gottmanhausen, 65 Ill. 499, it is said where
the true boundary line of a city lot was in question, " The
true boundary lines are where they were actually run on
the ground and where they were marked by the monuments
placed by the surveyor to indicate where they would be
found; and the most satisfactory evidence of the place
where the lines were located, is afforded by the original
stakes.   The monuments must necessarily control the field
notes and map of the survey as well as calls for course, dis-
tance and quantity."   This rule was also recognized in the
case of City of Mt. Carmel v. McClintock, 155 Ill. 608.   In
the City of Decatur v. Niedermeyer, 168 Ill. 68, the ques-
tion was the location of an alley which, according to later
surveys, should have been located some four to seven feet
north of the place where it was and where for years it had
been open, located and used, and in that case the court said:
" As has been repeatedly held by this court the true bound-
ary lines of a city lot are where they are actually marked

by the monuments placed by the surveyor to indicate where they are to be found, and the most satisfactory evidence of the place where the lines were located is afforded by the original stakes. The monuments must necessarily control the field notes and maps of the survey as well as courses, distances and quantity. These monuments are facts; the field notes and plats are but descriptions which serve to assist in ascertaining the facts."

In this case it is not questioned that Piel has the premises which he should have according to the location of the lots made by the original survey and therefore he has no just cause of complaint.

The judgment of the court below will be reversed, and, as in our opinion no judgment could be sustained in favor of defendant in error upon the undisputed facts, the cause will not be remanded.

*Reversed, with finding of facts.*

Finding of ultimate facts, to be incorporated in the judgment of the court:

(1) We find that the premises purchased by Piel from Tinnea were located and measured off by Piel and Tinnea together and that they were both satisfied with the location and measurement; and (2) that the measurement and location of said premises was correctly made according to the original lot corners established by the surveyor, who laid out the addition in accordance with the monuments placed by him and which were still in existence at the time Tinnea and Piel made their measurements.