William S. McCracken, Plaintiff in Error, *vs.* The City of Joliet *et al.* Defendants in Error.—William S. McCracken, Plaintiff in Error, *vs.* Arthur B. Cowing *et al.* Defendants in Error.

*Opinion filed December 22, 1915—Rehearing denied Feb. 2, 1916.*

1. Municipal corporations—*effect where stakes of the original survey of street cannot be located.* Where none of the stakes of the original survey of a street can be located or their precise location otherwise ascertained, the conduct of lot owners in building and maintaining their improvements within a certain line and the conduct of the city in maintaining a sidewalk with reference to the same line must be given great weight in determining the location of the street line.

2. Attorneys' liens—*when attorney's lien attaches to certificate of evidence.* Where attorneys who have been conducting a case are discharged while the certificate of evidence, which has not yet been filed, is in their hands for the purpose of perfecting an appeal or suing out a writ of error, they have a retaining lien on the certificate of evidence for their fees, and on the hearing to determine the amount of fees the client is not entitled to a jury trial.

Writs of Error to the Circuit Court of Will county; the Hon. Frank L. Hooper, and Hon. Dorrance Dibell, Judges, presiding.

Jones, Addington, Ames & Seibold, (Keene H. Addington, and Walter Hamilton, of counsel,) for plaintiff in error.

Cowing & King, for themselves; T. V. Gorey, and John W. Downey, for the city of Joliet and J. R. Lamb.

Mr. Justice Carter delivered the opinion of the court:

A bill was filed in the circuit court of Will county by plaintiff in error, William S. McCracken, against the city of Joliet and James R. Lamb, an adjoining property owner, to enjoin said city and said Lamb from interfering with the construction of a brick building by McCracken on the land which he claimed as part of his lot but which the city

authorities claimed to be an encroachment of about three and one-half feet on what always had been and should be reserved for sidewalk purposes as part of the street. After the pleadings were settled a hearing was had before the chancellor, which resulted in a decree being entered June 28, 1912, dismissing the bill for want of equity. From that decree an appeal was prayed to this court, but as the certificate of evidence, though presented to the trial judge within the time allowed, could not, for reasons hereinafter stated, be signed and filed in time, the case was brought here on a short record. On October 1, 1912, on motion of the then appellant, the appeal was dismissed in this court, and the case was thereafter re-docketed in the circuit court of Will county February 11, 1915. Plaintiff in error on October 22, 1914, filed a separate suit in said circuit court, alleging in his petition the refusal of his former solicitors in the main suit to deliver the original certificate of evidence in that case and praying the court to require them to do so, in order that the suit might be brought to this court on a writ of error. The respondents in the second suit, plaintiff in error's former attorneys, Arthur B. Cowing and Samuel W. King, filed their joint answer, alleging that by agreement with plaintiff in error they were to take the original case to the Supreme Court and were to be paid nothing if they lost the suit and $150 if they won, and further alleging their wrongful discharge, and that they had a statutory and common law lien on such certificate of evidence for their fees, to be determined upon a basis of *quantum meruit.* February 11, 1915, this second suit was consolidated with the first, and thereafter the chancellor entered a decree or order allowing respondents a lien on said certificate of evidence and finding their reasonable fees to be $100. Several months after the final order was entered in this matter plaintiff in error asked to have the order modified by granting permission to present for signature and to file a certificate of evidence as to the testimony heard on the

question of attorneys' fees. This last motion was denied and there is no certificate of evidence here as to the said testimony. By virtue of subsequent orders and the payment of the $100 to the attorneys the certificate of evidence in the original suit was filed as of September 24, 1912. This writ of error has been sued out to review the entire record as to the consolidated cause.

   We will first take up and consider the question in the main suit as to the bill for an injunction to restrain the city and Lamb from interfering with the construction of the brick building by plaintiff in error. The lot in question, forty-four feet wide, upon which said building was to be erected, is situated on the south side of Cass street, in the city of Joliet. Cass street runs east and west, and said lot is the third one west of the intersection of Cass street and Eastern avenue. Defendant in error Lamb owns a lot improved with a brick building immediately west of said lot. Adjoining plaintiff in error's lot on the east is one owned by Augustine, which is improved by a frame building. Next east of Augustine's property is a brick building owned and occupied by plaintiff in error. Plaintiff in error's lot in question has been vacant for many years. It was owned by Mary Dames from 1880 until purchased by plaintiff in error in November, 1909. For many years a bill-board had stood across the front of this lot. In July, 1910, plaintiff in error, with helpers, knocked the bill-board down and put up a fence where he claims his north line is, and started to build a brick wall which would be several feet north of the front of the buildings on that street in that locality. The city authorities, we understand from the record, moved this fence back and caused the arrest of the plaintiff in error. He later made another attempt to build on what he claimed to be his line, which the city prevented. The original bill herein was thereafter filed.

   The principal question in this case is the proper location of the south line of Cass street. Plaintiff in error claims

that this line is about three and one-half feet north of the
buildings on either side of him.  Defendants in error con-
tend that the line of the adjoining buildings marks the
approximate location of the said street line.  They further
contend that even though the north line of said buildings is
not the exact location of said street line as originally laid
out, said original location cannot now be determined, as the
evidence shows the original survey stakes cannot be found,
and that on this record plaintiff in error is estopped by the
public use of this disputed ground as far back as the line
connecting the front of the adjoining buildings, from claim-
ing any land north of said line.  The trial court found sub-
stantially as claimed by the defendants in error, finding the
south line of Cass street in front of plaintiff in error's lot
to conform to the north line of the Lamb building extended
east.  This line would intersect the projected west line of
the Augustine building two inches north of the northwest-
ern corner of said building.

During the time that Mary Dames owned this lot there
was never any contention with reference to the north line
of said lot.  She built a sidewalk in front of her lot and re-
placed it twice.  Under this sidewalk, for its support, she
caused to be built two walls, about eighteen inches thick and
several feet apart.  These walls are still under the sidewalk.
From the evidence we should judge they were never in-
tended to be at either extreme edge of the walk.  They are
about six feet high, bringing the sidewalk to grade, the lot
being somewhat low at this point.  The bill-board was built
on a line running from the northwest corner of the Au-
gustine building to about a foot from the northeast corner
of the Lamb building.  Several witnesses testified that they
crawled through between the Lamb building and the bill-
board to get down onto this lot.  Plaintiff in error contends
that they were able to do this because the west end of
the bill-board was a sufficient distance north of the north-
east corner of the Lamb building to allow a person to get

271 — 18

through, while defendants in error claim that the bill-board, if extended, would have touched the north-east corner of the Lamb building but that it did not extend quite that far. The evidence is not entirely clear on this point. Fastened to the supports of the bill-board was a horizontal strip about even with the sidewalk. From this ran several two-by-fours toward the street. On the top of these three planks were placed, running in the same direction as the street line, thus extending the sidewalk to the bill-board.

Plaintiff in error introduced as one of his witnesses William H. Zarley, county surveyor of Will county, who testified that the northeast corner of the lot at the corner of Cass street and Eastern avenue was shown by a cross cut in the stone sidewalk; that this cross had been placed there a number of years before by another surveyor, Comstock, now deceased. Zarley testified that there was an overplus of about three feet in this part of the city in addition to what was shown on the plat; that there used to be two crosses on that corner, about a foot apart. Manifestly, from this witness' testimony the actual location of the south side of Cass street as indicated on the original plat cannot be stated with certainty, as the stakes of the original survey, placed when it was platted, cannot be found. No evidence was offered why, when or how Comstock located such cross-mark or how he had figured with reference to the overplus. C. D. O'Callahan, connected with the engineering department of the city for about eighteen years, testified at length with reference to street lines, curbs, buildings, sidewalks, etc., in this vicinity. From his testimony, which is not in serious conflict with any other in the record, it appears that all buildings in that vicinity for a distance of two blocks west of Eastern avenue and running some distance east of this lot were situated as far or farther south than the north line of the Lamb building. If these buildings are on the original street line Cass street would be about seventy-two feet wide at this point. On the original plat it was sixty-

six feet. Defendant in error Lamb testified that he had built on his lot, immediately west of the lot here in question, a three-story brick building in 1891; that before building he requested city surveyor Comstock to locate the line of the street and built on the line thus located. This is the same surveyor who made the cross on the stone on the corner of Eastern avenue.

From the evidence in the record it appears that the bill-board was built along the front part of the property between eighteen and twenty years before this trial, and that during all that time the planks were placed on the scantlings next to said bill-board, parallel with the street, these planks being used by all people who wished to walk on them, as part of the sidewalk. The testimony shows that Cass street at this point was formerly largely used for residence purposes but that recently it had changed to a business street. There is considerable testimony by neighbors as to the location of former sidewalks and the bill-board, but, as usual in matters of this kind, it is not very definite and somewhat conflicting, as none of them had ever measured or made a record as to the actual measurements or conditions of former sidewalks, bill-board, etc. The weight of the evidence, in our judgment, sustains the decree of the trial court that all the space north of the north line of the Lamb building, extended across this lot, had been for twenty years or more planked and used for a sidewalk; that the city had accepted such space as part of the sidewalk and kept it in repair, the same as it kept in repair other sidewalks.

When none of the stakes in an original survey can be located or their precise location ascertained, the conduct of lot owners in building and maintaining their improvements within a certain line, and that of the city in maintaining its sidewalk for many years with reference to the same line, must be given great weight in determining the location of the street line. (*City of Mt. Carmel* v. *McClintock,* 155 Ill. 608; *City of Decatur* v. *Niedermeyer,* 168 id. 68.)

None of the buildings on the south side of Cass street, in this vicinity, extended further north than the Lamb building, and the sidewalk, as we understand from the evidence, extended as far south on the other lots as the north line of the Lamb building. On this record we think the proof shows that plaintiff in error is barred from asserting any rights to said disputed strip as against the right of the public to use the same for sidewalk purposes.

This leaves for consideration the question of the correctness of the trial court's order as to the lien of attorneys Cowing and King upon the certificate of evidence. This certificate of evidence had been loaned to the attorneys by the court reporter to enable them to present it to the trial judge and to prepare their abstract and briefs, but the reporter refused to surrender the certificate for filing until McCracken had paid him for preparing the same in accordance with his agreement. McCracken subsequently finished his payments to the reporter and the latter informed the attorneys that the certificate of evidence was released from his claim, but the attorneys were prevented from prosecuting a writ of error because McCracken failed to advance the fees necessary to obtain the record from the clerk of the court. Plaintiff in error decided not to continue said attorneys' services and employed other attorneys. Cowing and King claimed they were wrongfully discharged and were entitled to compensation on a *quantum meruit* basis and to a lien for such fees on these papers in their hands. The trial court, as already stated, ruled in their favor and allowed them as reasonable attorney's fees $100, ordering that this be paid before they be required to deliver over said papers. It appears by a plea of release of errors filed by Cowing and King in this court that such money was paid and the certificate of evidence delivered as required by said order, and by a *nunc pro tunc* order, as before stated, was filed and became for the first time a part of the records of the court. The question of attorneys' liens was dis-

cussed at length by this court in *Sanders* v. *Seelye,* 128 Ill. 631. It was there said that attorneys' liens are classed as general or retaining liens and charging or special liens; that the first attach to all the papers, documents, etc., which the attorney receives professionally; and the second only upon those which are recovered through his professional services. Under the reasoning of that case we think these papers could clearly be held under a retaining lien and that the trial court ruled correctly on this question. The weight of authority in other jurisdictions also strongly supports this conclusion. Weeks on Attorneys at Law, 778; 2 Thornton on Attorneys at Law, secs. 573, 577, inclusive; 3 Am. & Eng. Ency. of Law,—2d ed.—454, and cases cited; 4 Cyc. 1015, and cited cases.

Counsel for plaintiff in error concede that attorneys have a possessory lien on the papers of their clients ordinarily placed in their hands, but argue that this certificate of evidence and copy were placed in the hands of respondents for the special purpose of making up the record and perfecting an appeal to this court, and that under these circumstances they were not entitled to such a lien. As the certificate of evidence on the question of attorney's fees is not in this record we cannot say that the plaintiff in error's claim as to why or how these papers were placed in Cowing and King's hands is the correct one. From what does appear, and from the statements of counsel, we gather that plaintiff in error employed other attorneys because he thought Cowing and King were not proceeding fast enough with his case and were giving him dilatory answers when he protested against delay. The attorneys claim they were not proceeding with the case because plaintiff in error delayed in advancing the necessary circuit clerk's and stenographers' fees in order to get the record in shape. Even according to plaintiff in error's own argument these papers were in counsel's hands for the purpose of perfecting an appeal or taking out a writ of error. There is nothing we can find in this

record that indicates that the purpose for which they had possession of these papers was inconsistent with or adverse to their right to assert such a lien. (2 Thornton on Attorneys at Law, secs. 638, 639, and authorities cited.) From this record we cannot say that there is any error with reference to the trial court's rulings with reference to this matter. His former attorneys being entitled to this lien, plaintiff in error was not entitled, under the constitution, to a jury trial as to these attorneys' fees. *Standidge* v. *Chicago Railways Co.* 254 Ill. 524.

In view of the conclusions we have already reached it is unnecessary for us to consider or decide the other questions raised as to the plea of release of errors.

The decrees of the circuit court in both matters, as consolidated here, will be affirmed.

*Decrees affirmed.*